871 P.2d 1363

Benina S. **MARTINEZ**, personal representative of the Estate of Debbie D. Trujillo, deceased, Plaintiff–Petitioner,

v.

**ST. JOSEPH HEALTHCARE SYSTEM,** Defendant–Respondent.

No. 21287.

Supreme Court of New Mexico.

March 15, 1994.

358

Dennis Luchetti, Espanola, for petitioner.

Sorenson & Rhoades, P.C., Richard D. Barish, D. James Sorenson, Albuquerque, for respondent.

William H. Carpenter, Cynthia A. Fry, Michael B. Browde, Albuquerque, for amicus curiae NM Trial Lawyers.

## OPINION

RANSOM, Justice.

We issued a writ of certiorari to the Court of Appeals to review whether a hospital enforcing its statutory lien upon proceeds of a personal injury settlement must pay its proportionate share of attorney's fees and other costs incurred in the course of the patient's pursuit of her claim against the third party. The district court determined that a hospital should pay its proportionate share. The Court of Appeals summarily reversed. We reverse the Court of Appeals and affirm the district court.

*Facts and proceedings.* On August 11, 1991, Debbie D. Trujillo was admitted to St. Joseph Medical Center for treatment of injuries received in a hit-and-run automobile accident. She incurred hospital charges of $29,308.97 and made claim to benefits under the uninsured motorist coverage of her auto-mobile insurance policy with CNA Insurance Company. St. Joseph Healthcare System ("the Hospital"), owner of the medical center, filed notice of a hospital lien pursuant to the Hospital Lien Act, NMSA 1978, §§ 48–8–1 to –7 (Repl.Pamp.1987). Under the Act, the lien would attach to any judgment or settlement that Trujillo received from CNA. On February 5, 1992, Trujillo died of causes unrelated to the hospital care and Benina S. Martinez was appointed personal representative of Trujillo's estate. The Hospital then filed its claim against the estate.

After Trujillo's death, Martinez settled the uninsured motorist claim for $101,628.93. This equaled the full amount of Trujillo's coverage with CNA ($105,000) less the medical benefits that CNA had already paid ($3,371.07). The sum of $15,438 was withheld and placed in a structured settlement for Trujillo's minor daughter. Trujillo's medical costs, including the Hospital's lien, amounted to $63,346.56. The attorney's fees and costs, guardian ad litem fees, and administrative expenses amounted to $38,517.94. Finally, the estate incurred funeral expenses that amounted to $3,000. Knowing the settlement could not provide for the minor daughter and cover all of the costs, Martinez's attorney and Trujillo's primary health care providers reduced their fees to allow Martinez to settle. The Hospital, however, refused to reduce the amount of its claim.

Under protest, Martinez paid the Hospital the amount of its lien and filed this action for declaratory judgment to recover $10,606.04 as a proportionate share of the $35,824.20 in attorney's fees and $1,002.13 in costs and expenses. By stipulation, the only issue before the trial court was whether the Hospital should be held liable for a share of the fees. The trial court awarded Martinez a reduction of $7,748.56. The Hospital appealed and the Court of Appeals summarily reversed, holding that the Hospital Lien Act allows the Hospital to file a lien for the full amount of its "reasonable, usual and necessary hospital charges," *see id.* § 48–8–1(B), and that nothing in the Act requires the Hospital to subtract fees or any other costs of recovery from the amount of the lien.

*The Hospital Lien Act is silent with respect to attorney's fees and other costs of litigation.* Under the Hospital Lien Act, a hospital is entitled to assert a lien upon that part of a settlement going to the patient, less the amount paid for attorney's fees, court costs, and other expenses necessary to obtain the settlement. Section 48–8–1 of the Act states:

A. Every hospital located within the state that furnishes emergency, medical or other service to any patient injured by reason of an accident not covered by the state workmen's compensation laws is entitled to assert a lien upon that part of the judgment, settlement or compromise going, or belonging to such patient, less the amount paid for attorneys' fees, court costs and other expenses necessary thereto in obtaining the judgment, settlement or compromise, based upon injuries suffered by the patient or a claim maintained by the heirs or personal representatives of the injured party in the case of the patient's death.

B. A hospital lien may be filed upon damages recovered, or to be recovered, either as a result of a judgment, or upon a contract of settlement or compromise, for the amount of the reasonable, usual and necessary hospital charges for treatment, care and maintenance of the injured party in the hospital and to the date of payment of the damages.

Martinez argues that under the statute the Hospital should pay its proportionate share of legal expenses because the Hospital would have nothing upon which to attach its lien without the efforts of the estate's attorney. The Hospital contends that the Act allows it to assert a lien upon the patient's net recovery for the full amount of "reasonable, usual and necessary hospital charges." Both parties concede, however, and we likewise find, that the Act is silent on the issue of apportionment of expenses to the lienholder. Because of this silence, "the issue is open for decision by this Court, applying what we believe to be the relevant policy considerations...." *Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't*, 113 N.M. 593, 598, 830 P.2d 145, 150 (1992). "[T]he courts have been left the task of determining where the equities lie when the statutory provision fails to provide guidelines." *Transport Indem. Co. v. Garcia*, 89 N.M. 342, 344–45, 552 P.2d 473, 475–76 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976).

*Cases cited from other jurisdictions are distinguishable or inapposite.* According to the Hospital, the Act does not set forth a specific amount for which a lien may be asserted, but rather establishes the pool of funds that may be subject to a lien. The Hospital interprets the statute as allowing it to assert a lien for the full amount of its reasonable charges on the amount left in the pool after deducting legal and other expenses necessarily incurred in obtaining the judgment, settlement, or compromise. The Hospital contends that in this case the settlement amount was great enough to cover both the attorney's fees and the lien amount and therefore both should be paid in full. The Hospital encourages this Court to follow what one case referred to as "a succession of recent decisions by unanimous courts [that] have rejected claims by plaintiffs' attorneys to compensation from the corpus of a hospital lien." *Bashara v. Baptist Memorial Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex.1985).

The Hospital cites several cases from other jurisdictions in which the respective courts have held that hospitals should not be found liable for a portion of the legal expenses. We have reviewed these cases and find them to be distinguishable or inapposite. In *Maynard v. Parker*, 75 Ill.2d 73, 25 Ill.Dec. 642, 644, 387 N.E.2d 298, 300 (1979), *Illini Hospital v. Bates*, 135 Ill.App.3d 732, 90 Ill.Dec. 528, 530, 482 N.E.2d 235, 237, *appeal denied* (Dec. 4, 1985), and *Harlow v. Lloyd*, 15 Kan. App.2d 497, 809 P.2d 1228, 1230 (1991), the courts all interpreted lien statutes that limited the amount of the hospital's lien to a set amount or to a percentage of the plaintiff's recovery. Further, in *Maynard*, 25 Ill.Dec. at 643, 387 N.E.2d at 299, *Illini Hospital*, 90 Ill.Dec. at 530, 482 N.E.2d at 237, and *Ni-*

*choles v. St. Helena Parish Police Jury*, 604 So.2d 1023, 1031 (La.Ct.App.), *cert. denied*, 605 So.2d 1378 (La.1992), the courts interpreted statutes that limited recovery to nonprofit or public hospitals. Because the statutes set some limitations on the amount of the lien in those cases, the courts could determine that the respective legislatures did not intend to further limit the hospitals' recoveries. We do not, however, have such limitations in our statute.

In *Bashara*, the court interpreted a statute that required a hospital lien to be paid in full before there could be a valid release of the judgment. 685 S.W.2d at 309. Thus, the Texas court had some statutory basis upon which to base its opinion. The same is true in *Harlow*, 809 P.2d at 1230, and *Nicholes*, 604 So.2d at 1034, wherein the courts were able to use statutory construction to interpret their hospital lien acts. Because our Act is silent, however, we cannot engage in statutory construction.

The Hospital cites several cases that reject apportionment of attorney's fees in hospital lien cases because of the belief that the benefits derived by a hospital are merely incidental to the benefit derived by the victim. Thus, unjust enrichment claims were rejected by the courts in *Bashara*, 685 S.W.2d at 310, and *Lynch v. Deaconess Medical Center*, 113 Wash.2d 162, 776 P.2d 681, 683 (1989) (en banc). Implied contract claims were rejected by the courts in *Broadlawns Polk County Hospital ex rel. Fenton v. Estate of Major*, 271 N.W.2d 714, 716 (Iowa 1978), and *Sisters of Charity of Providence v. Nichols*, 157 Mont. 106, 483 P.2d 279, 282 (1971). Finally, subrogation theories were rejected by the courts in *Harlow*, 809 P.2d at 1231, *Sisters of Charity*, 483 P.2d at 283, *Bashara*, 685 S.W.2d at 311, and *Lynch*, 776 P.2d at 683–84. In the present case, however, we are not faced with issues of unjust enrichment, implied contract, or subrogation. Thus, the holdings of these cases are inapposite and we do not address their validity.

■ *The "common-fund" doctrine provides fundamental fairness in this case.* In-

stead of applying case law from other jurisdictions, we will follow the analogous precedents of the New Mexico courts. In *Transport Indemnity*, a worker's compensation case, our Court of Appeals held that an employer and a worker were to apportion the legal expenses necessary to obtaining a judgment against a third-party tortfeasor. 89 N.M. at 345, 552 P.2d at 476. In doing so, the Court followed the rule that if a statute is silent and provides no guidelines on the matter, the reviewing court should apply a "fundamental fairness" analysis. *Id.* Applying that analysis, the Court determined that, because the worker bore the expenses and risks of litigation, it would be unduly burdensome to require the worker to pay all of the legal expenses when the employer directly received a portion of the benefit. *Id.*

■ We believe that in hospital lien cases the "common-fund" doctrine most appropriately defines the duties and liabilities of the parties and provides the most fundamental fairness. Under this doctrine, an attorney who creates a pool of funds for a group has the right to seek payment from the pool or seek proportional contribution from those who accept the benefits of the attorney's efforts. *See Las Vegas Ry. & Power Co. v. Trust Co.*, 17 N.M. 286, 291–92, 126 P. 1009, 1010 (1912) (recognizing common-fund doctrine but denying its application in case in which no benefit resulted to the majority bond holders), *error dismissed*, 238 U.S. 645, 35 S.Ct. 792, 59 L.Ed. 1503 (1915). In hospital lien cases, the hospital's right to assert a lien, and its right to recovery based on that lien, depend *by statute* on the obtaining of a judgment or settlement. *See* § 48–8–1. The proceeds of that judgment or settlement operate as a fund, and, without the fund, the hospital has nothing upon which to assert a lien under the Act. By seeking payment from the fund in reliance on the lien, the hospital directly receives the benefits of the work done by the patient's attorney. Further, as in *Transport Indemnity*, 89 N.M. at 345, 552 P.2d at 476, the estate bore the initial expenses and risks of litigation. Because of this, it would be fundamentally un-

fair to allow the Hospital to collect on its lien without paying its prorated share of the legal expenses.

The Hospital argues against the use of the "common-fund" doctrine for three reasons. First, it contends that our holding in *Gutierrez v. Gutierrez*, 99 N.M. 333, 657 P.2d 1182 (1983), prevents this Court from applying equitable doctrines like the common-fund doctrine in all hospital lien cases. In *Gutierrez*, a public hospital filed liens for hospital charges against individuals who sought treatment from the hospital following an automobile accident. *Id.* at 334, 657 P.2d at 1183. The injured parties settled their claims against a third-party tortfeasor and requested that the hospital reduce the amount of its lien. *Id.* The hospital refused and the injured parties brought an action seeking an equitable distribution of the proceeds. *Id.* We held on appeal that the hospital was bound by the New Mexico Constitution to accept nothing but full payment for its lien. *Id.* at 335, 657 P.2d at 1184.

*Gutierrez* is distinguished from this case because the Hospital here is a private hospital and, as it concedes, may reduce its lien if it so chooses. It is not bound by the constitution to accept full payment, and the constitution does not prohibit this Court from applying equitable principles in this case. *Cf. White v. Sutherland*, 92 N.M. 187, 191, 585 P.2d 331, 335 (Ct.App.) (holding that constitution does not prohibit application of equitable principles), *cert. denied*, 92 N.M. 79, 582 P.2d 1292 (1978).

Second, the Hospital cites to other jurisdictions that have rejected the application of the common-fund doctrine in hospital lien cases and encourages this Court to follow the holdings of those courts. *See Mitchell v. Huntsville Hospital*, 598 So.2d 1358, 1362 (Ala. 1992); *Maynard*, 25 Ill.Dec. at 644, 387 N.E.2d at 300; *Broadlawns*, 271 N.W.2d at 716–17; *Bashara*, 685 S.W.2d at 310–11; *Lynch*, 776 P.2d at 684. In each of these cases, the courts held that the common-fund doctrine would not apply because the hospital's benefit is merely incidental to the recov-

ery and because the hospital/patient relationship is a creditor/debtor relationship that is unaffected by any action against a third party. *See Maynard*, 25 Ill.Dec. at 644, 387 N.E.2d at 300; *Bashara*, 685 S.W.2d at 310–11.

We do not agree that the benefit the hospital receives from the judgment or settlement is merely incidental. If the attorney for the patient does not secure a judgment or settlement, the hospital has nothing to which it may attach its lien. At that point, the hospital/patient relationship truly is nothing more than a creditor/debtor relationship, and the hospital must use its own legal resources to recover its funds. In contrast, if the patient's attorney secures a judgment or settlement (as the attorney did in this case), the hospital recovers money due without expending its legal resources. If we did not allow division of the legal costs, hospitals would be encouraged to sit back and reap the rewards of another's labor at that party's expense. We do not believe that is consistent with public policy in New Mexico.

Finally, the Hospital argues that if we allow apportionment of fees in this case, we must require others who receive some benefit from the judgment to pay their portion of the fees. Citing *Sisters of Charity*, 483 P.2d at 282–83, the Hospital posits that if it must pay a portion of the legal expenses, then a mortgage holder who receives payment from the proceeds must likewise pay its portion of the legal fees. Another example used in *Sisters of Charity* is that if a subrogated insurer uses an attorney to prosecute the subrogated claim and then pays its utilities with the proceeds, the utility company would be bound to pay the attorney for services because it received a benefit from the attorney's labor. *Id.*, 483 P.2d at 283. The problem with these and similar examples is that the mortgage holder or utility receive only an indirect benefit from the attorney's work. In this case, however, the common fund is meant to compensate providers that have contract assignment, subrogation, or statutory lien rights. These providers have a recognized interest in the accumulation of a fund

**362**

from a specific source and receive a direct benefit from the attorney's labor; thus, the extension of the proration argument to others who may incidentally benefit is inappropriate.

*The lien is satisfied by the net proceeds of the settlement.* Citing *Mitchell*, 598 So.2d at 1360–61, the Hospital argues that if patients are allowed to deduct attorney's fees from the lien, the lien would be unsatisfied and remain in effect as to the balance due. The Hospital's argument, however, is based on the false premise that the lien is not paid in full. The lien is satisfied from the net proceeds of the settlement or judgment pursuant to the Act. Under our holding today, the Hospital then has a responsibility to pay its proportionate amount of attorney's fees incurred in obtaining the net proceeds, either out of the net proceeds or from some collateral source. In essence, it is as if the Hospital employed an attorney to secure payment from the patient; the Hospital might recover the full amount of the payment but its net benefit would be reduced by legal fees that would not be reimbursed absent a statutory or contractual right to those fees. Thus, there is no deficiency and the lien would not remain in effect.

*Conclusion.* Applying principles of fundamental fairness, we hold that, in the action brought by Martinez on behalf of the estate to secure uninsured motorist benefits, the Hospital should be held liable for its portion of the legal expenses. The Court of Appeals is reversed and the judgment of the trial court is reinstated.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.