919 P.2d 1099

**Crusita M. WRIGHT, Plaintiff–Appellant,**

v.

**FIRST NATIONAL BANK IN ALBU-QUERQUE, Defendant–Appellee,**

**Lovelace Healthcare System, Lienholder/Appellee,**

**and**

**The United States Department of the Air Force (CHAMPUS Program), Lien Claimant.**

No. 16457.

Court of Appeals of New Mexico.

April 5, 1996.

Certiorari Granted June 13, 1996.

John R. Polk, Albuquerque, for Appellant.

Jay Frontino, Max J. Madrid, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellee.

Calvin Wells, Law Offices of Manny M. Aragon, Albuquerque, for Lienholder–Appellee Lovelace Healthcare System.

Robert Colvin, Claims Attorney, United States of America (CHAMPUS) White Sands Missile Range, for Lien Claimant.

## OPINION

DONNELLY, Judge.

1. This is an appeal from an order apportioning attorney fees and costs between Plaintiff and two claimants to monies recovered by Plaintiff following her prosecution of a tort action. Plaintiff contends that the trial court's assessment of attorney fees and costs to Lovelace Medical Center (Lovelace) on its hospital lien and to the United States Military CHAMPUS Program[1] on its claim filed July 13, 1993, was inequitable, and that the trial court erred in allowing Lovelace and CHAMPUS to recover on their claims out of the remaining monies held by her following the resolution of her tort action and the payment of her attorney fees and costs. For the reasons discussed herein, we reverse.

## FACTUAL BACKGROUND

2. Plaintiff slipped on the ice while walking on the sidewalk of the First National Bank of Albuquerque, presently known as the First Security Bank (the Bank). She filed suit against the Bank alleging that it negligently maintained its premises. Following a bench trial, the trial court awarded Plaintiff damages in the amount of $30,450. The trial court, however, reduced Plaintiff's damages under the doctrine of comparative negligence to the sum of $15,225 because it found that Plaintiff was fifty percent comparatively negligent. Both Plaintiff and the Bank sought an award of costs; however, they each subsequently agreed to withdraw their cost bills, reserving the right to reassert their cost bills only in the event that the judgment was reversed and the case retried. In a separate appeal, this Court affirmed the

---

1. The term "CHAMPUS" means the Civilian Health and Medical Program of the Uniformed Services, as defined in 10 U.S.C. § 1072(4) (1988 and Supp. III).

trial court's damage award by memorandum opinion in Cause No. 15,992 on February 6, 1995.

3. Plaintiff's attorney agreed to represent her in her personal injury claim against the Bank under a contingent-fee agreement whereby counsel was to receive one-third of any recovery, plus tax thereon, for work at trial, and forty percent of any recovery if an appeal was necessary. During the pendency of this action, pursuant to NMSA 1978, Section 48–8–1 (Repl.Pamp.1995), Lovelace filed a notice of hospital lien in the amount of $2561.36 on July 13, 1993, against Plaintiff. Lovelace filed an additional lien for $242.43 on June 30, 1994. Because Plaintiff received medical benefits under a military CHAMPUS program, another claim was asserted by the United States against the Bank on July 7, 1994, for inpatient hospital care in the amount of $2475.76.[2]

4. After deducting the amount of her attorney's fees in the amount of $6090, gross receipts taxes in the amount of $353.98, and costs of $7275.17, Plaintiff was left with a balance of $1505.85 from her recovery against the Bank.

5. On October 28, 1994, Plaintiff filed a motion requesting that the trial court equitably apportion the claims. Following a hearing on March 28, 1995, the trial court entered an order stating that "the court values the reasonable cost of attorneys fees to … collect accounts of the Lovelace Health Systems and Champus to be $1,000.00 if these bills were collected through the normal collection process," and ordered that the claims of Lovelace and CHAMPUS be apportioned as follows:

| | Amount claimed | Amount awarded |
| --- | --- | --- |
| Lovelace claim | $2803.79 | $1803.79 |
| CHAMPUS claim | $2475.76 | $1475.76 |

## DISCUSSION

■ 6. Plaintiff argues on appeal that the trial court erred in making its apportionment of the lien claim of Lovelace and the claim of CHAMPUS, and that the trial court's method of apportionment resulted in a net loss to Plaintiff and exceeded the amount remaining from her recovery in the tort action. Because the facts are essentially undisputed, we review the trial court's order to ascertain whether the trial court properly applied the law to the facts before it. *Amica Mut. Ins. Co. v. Maloney,* 120 N.M. 523, 527, 903 P.2d 834, 838 (1995).

■ 7. The hospital lien statute, Section 48–8–1(A), authorizes the imposition of a lien on that part of the judgment recovered by the plaintiff "less the amount paid for attorneys' fees, court costs and other expenses necessary thereto in obtaining the judgment." In *Martinez v. St. Joseph Healthcare Sys.,* 117 N.M. 357, 360, 871 P.2d 1363, 1366 (1994); and *Amica,* 120 N.M. at 529–30, 903 P.2d at 840–41, our Supreme Court held that if a plaintiff's attorney secures a judgment or settlement and a hospital recovers money due on its services without expending its legal resources, fundamental fairness requires that a hospital's bills be equitably apportioned to allow it to bear a fair portion of the plaintiff's legal fees and costs from the common fund obtained by the plaintiff's efforts.

■ 8. In *Amica* our Supreme Court recognized two exceptions to the equitable apportionment of attorney fees. 120 N.M. at 529–30, 903 P.2d at 840–41. One, where the hospital actively participates or substantially contributes in pursuing the recovery; and two, where the lien claimants show that the amount of the plaintiff's attorney fees are unfair. *Id.* Under *Amica,* in order for a lienholder to claim active participation in obtaining the judgment or settlement, it must demonstrate that it participated in the settlement negotiations with the insured for the entire settlement and substantially contributed to the total settlement award. *Id.* Under the "common-fund" doctrine, third parties who share in the benefits recovered by the plaintiff are required to proportionately contribute to the payment of reasonable attorney fees and costs expended in obtaining a recovery. *Id.; Martinez,* 117 N.M. at 360–62, 871 P.2d at 1366–68; *see also Transport*

2. Pursuant to 42 U.S.C. § 2651 (1988), the United States is authorized to seek recovery against a tort-feasor for the reasonable value of medical and hospital care furnished to a plaintiff covered by CHAMPUS.

*Indem. Co. v. Garcia*, 89 N.M. 342, 344, 552 P.2d 473, 475 (Ct.App.) (attorney fees are paid out of the common fund because fundamental fairness should not require claimant to bear burden of all expenses and the risk of litigation), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976). The trial court did not find either of the exceptions noted in *Amica* to be applicable in the present case. *See Citizens Bank v. C & H Constr. & Paving Co.*, 93 N.M. 422, 428, 600 P.2d 1212, 1218 (Ct.App.) (attorney's contingency fee of 33⅓% of amount of recovery held not unreasonable or unconscionable), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979).

9. Plaintiff argues that instead of assessing a proportionate share of attorney fees and costs of prosecuting this case under the common-fund doctrine, the trial court utilized a formula which determined the cost of what it believed would constitute reasonable attorneys' fees for collecting the lien claim of Lovelace and the claim of CHAMPUS. Plaintiff also contends the formula employed by the trial court failed to properly take into consideration Plaintiff's reasonable costs and expenses. We think Plaintiff's argument misconstrues in part the trial court's ruling. Under the common-fund doctrine, a plaintiff who creates a pool of funds from a tortfeasor has the right to insist that others who seek to obtain payment from such pool make an equitable contribution for reasonable attorney fees and costs in creating the fund they seek to benefit from. *See* § 48–8–1(A). However, under the hospital lien statute, NMSA 1978, Section 48–8–3(B) (Repl. Pamp.1995), if a hospital lien claimant is required to enforce its lien claim through legal proceedings "the hospital may recover a reasonable attorney's fee and the costs of filing and recording the lien." Here, the trial court, in ruling on the matters before it, sought to consider the reasonable costs incurred by Lovelace in asserting its lien, and the amount CHAMPUS might have incurred if it had initiated legal proceedings to pursue its claim.

10. We believe the trial court erred in calculating the amount to be awarded to Lovelace and to CHAMPUS based on the amount of legal fees and costs that the two claimants might have incurred had they elected to pursue such claims through the normal collection process. The apportionment formula applied by the trial court resulted in a net loss to Plaintiff and sought to award more than remained in the unexpended common fund recovered by Plaintiff. Additionally, there is nothing in the record before us indicating that CHAMPUS was entitled to exert a lien under the hospital lien statute, or that it had a right to pursue any right of recovery against Plaintiff. Under the Federal Medical Care Recovery Act, 42 U.S.C. § 2651, the United States has a right to exert a claim against a *third party* who has negligently injured an individual to whom the government has furnished medical care and treatment. *See United States v. Haynes*, 445 F.2d 907, 908 (5th Cir.1971); *Leatherman v. Pollard Trucking Co.*, 482 F.Supp. 351, 353 (E.D.Okla.1978). Under the federal act, the federal government's right to recover against a tortfeasor can be exercised only if the party causing the injury is tortiously liable to the victim under state law. *United States v. Neal*, 443 F.Supp. 1307, 1311 (D.Neb.1978). No right of recovery by the United States is authorized, however, under the federal act against the injured party who was the recipient of care and treatment from the government. *See United States v. Greene*, 266 F.Supp. 976, 979 (N.D.Ill.1967); *United States v. Ammons*, 242 F.Supp. 461, 463 (N.D.Fla. 1965).

11. In order to expedite the ultimate disposition of this case, we conclude that the balance of the monies remaining in the common fund should be paid to Lovelace pursuant to its hospital lien claim and in partial payment against the total amount claimed by it. Although Plaintiff correctly notes she is entitled to an equitable offset out of such fund for her attorney's fees and costs expended in obtaining such judgment, this offset may effectively be matched by a like sum awarded to Lovelace for its attorney's fees and costs in seeking to enforce its lien. *See* § 48–8–3(B).

12. Because CHAMPUS was not a party or intervenor to the proceedings herein and has failed to establish any right to a lien or to

the remaining monies held by Plaintiff, we conclude that CHAMPUS is not entitled to any of the monies remaining in the common fund. *See Carrington v. Vanlinder,* 58 Misc.2d 80, 294 N.Y.S.2d 412, 415 (Sup.Ct. 1968) (right of United States to recover on claim against tort-feasor is contingent upon it becoming party to action by intervention, joinder, or a showing that plaintiff has acted on its behalf). Nothing in this opinion, however, is intended to preclude Lovelace or CHAMPUS from pursuing other appropriate legal remedies to recover any additional amounts which may be owing to them.

*CONCLUSION*

13. For the foregoing reasons, we reverse and remand the order of apportionment and for entry of an amended order consistent herewith. The parties shall bear their own costs and attorneys' fees incident to this appeal.

14. IT IS SO ORDERED.

HARTZ, J., specially concurs.

ALARID, J., concurs.

HARTZ, Judge (specially concurring).

15. I concur in the result. I agree that Plaintiff's attorney should receive his attorney's fees in full and that Lovelace should receive the amount of the judgment remaining after payment of attorney's fees and costs. I write separately, however, because my understanding of how to handle attorney's fees under the hospital-lien statute differs from the majority's.

16. I base my understanding of the hospital-lien statute on a consideration of what would happen in the absence of such a statute. In that event a hospital could sue a patient for the unpaid medical bills and obtain a judgment for that amount. As a judg-ment creditor of the patient, the hospital could then garnish any judgment the patient obtained from a third-party tortfeasor. *See Hardwick v. Harris,* 22 N.M. 394, 163 P. 253 (1917); 6 Am.Jur.2d *Attachment and Garnishment* § 135 (1963).[1] The hospital would be entitled to its attorney's fees in the garnishment action. *See* NMSA 1978, § 35–12–16(A) (Repl.Supp.1988).

17. The hospital-lien statute accomplishes essentially the same purpose, but it provides three advantages to the hospital. First, rather than filing suit against a patient and obtaining judgment, the hospital need only file a lien with the county clerk and give proper notice. *See* NMSA 1978, § 48–8–2 (Repl.Pamp.1995). This procedure obviously saves the hospital some attorney's fees that would be incurred in suing the patient, although it is quite possible that the patient would ultimately have to pay those fees to the hospital anyway (perhaps pursuant to a contract between the patient and the hospital or perhaps if the hospital bill was on open account, *see* NMSA 1978, § 39–2–2.1 (Repl. Pamp.1991)). Second, the lien gives the hospital priority over other creditors of the patient, who may also wish to be paid out of the judgment proceeds. Third, the hospital does not need to wait for the patient to obtain a judgment against the third-party tortfeasor before it files its lien. I am not certain whether an ordinary creditor could garnish or attach its debtor's chose in action prior to the debtor's obtaining judgment. *See generally* Annotation, *Unliquidated Claims of Damage in Tort as Subject of Garnishment,* 93 A.L.R. 1088 (1934).

18. Given the obvious purpose of the hospital-lien statute to expedite collection of bills owed to hospitals, it would be remarkable if it permitted the patient to pay less of the judgment to the hospital pursuant to a lien

---

1. In her brief in support of her motion for rehearing, Plaintiff contends that the judgment could not be garnished because insurance proceeds (which presumably were the source of payment for the judgment) are exempt from creditors under NMSA 1978, Section 42–10–3. That statute, however, does not encompass proceeds from liability insurance policies. It is restricted to life, accident, and health insurance. Accident insurance should not be confused with liability insurance. Accident insurance pays the insured when the insured suffers injury as the result of an accident. *See American Fidelity Co. v. Bleakley,* 157 Iowa 442, 138 N.W. 508, 509 (1912); 1 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 24 (rev. ed. 1981); 1 George J. Couch, *Couch Cyclopedia of Insurance Law* § 1:18 (2d ed. 1984); NMSA 1978, § 59–18–1 through –23 (former law governing "accident and health insurance"); *cf.* NMSA 1978, § 59A–7–3 (Repl.Pamp.1995) (accident insurance now encompassed by the term "health" insurance).

than the patient would have to pay if the hospital garnished the judgment. Yet that is what Plaintiff appears to be seeking here. If the hospital garnished the judgment, I know of no legal doctrine that would allow the patient to keep any of the proceeds of the judgment before the hospital is paid in full. *See City & County of San Francisco v. Sweet*, 12 Cal.4th 105, 48 Cal.Rptr.2d 42, 47–49, 906 P.2d 1196, 1202–03 (1995). For example, if the patient won a judgment for breach of contract on a cause of action totally unrelated to the accident leading to the hospitalization, the hospital could garnish as much of the judgment as necessary to pay the bill in full. (Of course, the patient could challenge the amount of the bill, but that could be done under the hospital-lien statute also.)

19. In the present case, if the Plaintiff were permitted to keep a portion of the judgment, the hospital could sue to collect that sum (and any additional amount necessary to pay the debt in full). The hospital would be able to collect the sum unless the Plaintiff spent the money, converted the money into assets exempt from creditors, or declared bankruptcy. I am aware of no principle of equity that would suggest that failure to collect for such reasons would be preferable to simply letting the hospital collect the sum at the outset.

20. Thus, I would conclude that Lovelace has the first claim on the $1505.85. CHAMPUS does not have a lien, so it, like Plaintiff, has rights inferior to Lovelace's. There is no question regarding the fairness of compensation to Plaintiff's attorney, because he receives just what he would have if there had been no lien; the hospital-lien statute gives attorney's fees priority over the hospital lien.

21. As for concern about the hospital's paying its fair share of the attorney's fees, I would note that the attorney here has been paid in full and the hospital is collecting only about half of the amount it is owed. Perhaps

---

2. In her brief in support of her motion for rehearing, Plaintiff contends that *Martinez* should not be read narrowly because our Supreme Court extended the "common fund" doctrine to encompass subrogated insurers in *Amica Mutual Insurance Co. v. Maloney*, 120 N.M. 523, 903 P.2d 834 (1995). The views expressed in this

the approach I am suggesting is contrary to some language in *Martinez v. St. Joseph Healthcare System*, 117 N.M. 357, 871 P.2d 1363 (1994). I would read *Martinez*, however, as turning on the Supreme Court's view of the inequitable behavior of the hospital with respect to the settlement negotiations in that case. In particular, as I would read *Martinez*, when the plaintiff's attorney has not had to compromise his or her fee in order to effect a settlement, there would be no cause for reducing recovery under a hospital lien.[2]

opinion, however, have no application to the *Amica* context. Unlike the hospital in a hospital-lien case, a subrogated insurer has no claim against the plaintiff (the insured); it merely steps into the shoes of the insured with respect to the insured's claim against the tortfeasor.