918 P.2d 1337

**BANK OF NEW MEXICO, Plaintiff,**

v.

**Joe N. ROMERO, Defendant/Third Party Plaintiff–Appellee,**

**J.W. Jones Construction Company and Safeco Insurance Company, Third Party Defendants/Counterclaimants/Appellants/Cross–Appellees,**

**International Fidelity Insurance Company, Counterclaim Defendant/Cross–Appellant.**

No. 15975.

Court of Appeals of New Mexico.

April 9, 1996.

Certiorari Denied June 20, 1996.

David L. Plotsky, Albuquerque, for Joe N. Romero.

Norman S. Thayer, Juliana M. Fong, Sutin, Thayer & Browne, Albuquerque, for J.W. Jones Construction Company and Safeco Insurance Company.

Eric R. Burris, Keleher & McLeod, P.A., Albuquerque, James Ferrucci, Wolff & Samson, Roseland, NJ, for International Fidelity Insurance Company.

## OPINION

APODACA, Chief Judge.

1. This appeal arises from a dispute between the prime contractor, J.W. Jones Construction Company (Jones), and a subcontractor, Joe N. Romero (Romero), on a highway construction project. Jones' surety, Safeco Insurance Company, and Romero's surety, International Fidelity Insurance Company (International), were also parties in the suit. The jury returned a verdict in favor of Romero on his third-party complaint against Jones, awarding Romero $466,000 in compensatory damages. The trial court later awarded Romero attorney fees of $30,487.22. International, which satisfied Romero's debts related to the highway project, filed a cross appeal. International contends that the trial court erred in failing to award it an equitable lien against a portion of the verdict. The lien sought equaled International's subrogated interest to the extent that it had satisfied the debts of Romero. By separate memorandum opinion, we affirmed the trial court on Jones' direct appeal. On International's cross appeal, we hold that the trial court erred in not awarding an equitable lien to International. We therefore reverse and remand to the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Jones was awarded the prime contract to widen a highway. Romero entered into a subcontract with Jones to perform "unclassified excavation" and "subgrade preparation" for the highway project. A dispute arose between Jones and Romero regarding the scope of work Romero was obligated to perform under the subcontract. Ultimately, Romero left the highway project without completing the work. As a result, International was obligated to satisfy Romero's debts to various subcontractors and materialmen. International paid $37,931 to satisfy those debts.

3. Romero later filed suit against Jones, contending that Jones breached the subcontract by requiring Romero to perform extra work without compensation. Romero alleged that, by withholding money from him, Jones prevented him from completing his work under the subcontract. Romero also alleged

that Jones' actions caused Romero to declare bankruptcy and impaired his ability to obtain bonding for other construction projects. International sought to be reimbursed for the debts it paid on behalf of Romero from the jury verdict of $466,000.

4. The trial court apparently concluded that recovery on a claim for equitable subrogation had to come from a preexisting, withheld fund in which monies otherwise payable to Romero had been deposited by Jones. Believing that reimbursement could not be made from the judgment Romero secured against Jones, the trial court rejected International's claim for equitable subrogation.

## II. DISCUSSION

■ 5. Romero concedes on appeal that International is entitled, as surety, to a portion of the judgment. Indeed, the case law in other jurisdictions supports International's claim of equitable subrogation. *See, e.g., Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *In re J.V. Gleason Co.,* 452 F.2d 1219 (8th Cir.1971); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So.2d 113 (Fla. 1989). We recognize that most of the cases dealing with the type of equitable subrogation claim asserted by International in this appeal involve situations where the surety is attempting to recover from a preexisting fund. Equitable subrogation claims, however, have also been upheld where the surety was seeking to recover from other funds. *See Canter v. Schlager,* 358 Mass. 789, 267 N.E.2d 492 (1971). As we noted, Romero does not dispute that International is entitled to some degree of equitable subrogation. We too believe such entitlement should be afforded under the circumstances present here. We thus hold that International's claim for equitable subrogation entitles it to be paid directly from Romero's judgment against Jones.

■ 6. The only dispute remaining between the parties in the cross appeal concerns the amount International is entitled to on its claim for equitable subrogation. On the one hand, Romero contends that the amount of International's claim should be offset by a proportionate share of the attorney fees Romero incurred in obtaining the judgment against Jones. In support of his contention, Romero cites to cases from other jurisdictions. On the other hand, International argues that those cases are distinguishable because they involve insurance policies in which the insured was not obligated to repay the insurer unless he recovered from the tortfeasor. In contrast, International contends, under the surety bond requirements, Romero was obligated to indemnify International, even if Romero did not recover a judgment against Jones. We determine, however, that these distinctions do not relieve International of the responsibility to pay for a proportionate share of Romero's attorney fees.

7. We believe that our Supreme Court, in *Martinez v. St. Joseph Healthcare System,* 117 N.M. 357, 871 P.2d 1363 (1994), held contrary to International's argument. In *Martinez,* the hospital lienholder was, as Jones was in this appeal, presumably entitled to repayment from the patient whether or not the patient was successful in recovering a judgment from a third-party tortfeasor. Nevertheless, our Supreme Court held that, under the common fund doctrine, the hospital lienholder was still required to pay for a proportionate share of the attorney fees incurred by the patient in recovering a judgment from the third-party tortfeasor. *Id.* at 360–62, 871 P.2d at 1366–68. We believe that the facts in this appeal fall under the common fund doctrine discussed in *Martinez* because Romero declared bankruptcy. The judgment he recovered against Jones was essentially a common fund for the benefit of his creditors. We thus hold that International's equitable lien must be offset by a proportionate share of the attorney fees incurred by Romero in recovering his judgment against Jones.

8. International nonetheless argues that it should not have to pay a proportionate share of Romero's attorney fees because it expended its own substantial sums to help

**840**

Romero recover the judgment against Jones. *See Alston v. State Farm Mut. Auto. Ins. Co.,* 660 So.2d 1314, 1315 (Ala.Civ.App.1995) (common fund doctrine does not require person to pay for cost incurred by another person in creating a common fund if that person has expended his own substantial costs to create the fund). This bald argument, without more, is not persuasive. International has not drawn our attention to any part of the record and shown, with at least some specificity, the amount of its own attorney fees and how those fees were used to assist Romero in recovering his judgment against Jones. *See In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.) (reviewing court will not search record to find evidence to support appellant's claims), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992). We therefore reject International's contention that its own participation in the lawsuit should relieve it of the responsibility to offset a proportionate share of Romero's attorney fees.

9. International last argues that offset is not appropriate because Romero's agreement to indemnify International under the surety bond obligated him to reimburse International for its litigation costs. We do not believe, however, that International's litigation expenses are properly included as part of its equitable lien because the lien is simply intended to cover amounts International paid to Romero's subcontractors and materialmen. *See Transamerica Ins. Co.,* 540 So.2d at 115–16 (equitable subrogation rights extend to amounts surety pays on behalf of contractor); *see also Martinez,* 117 N.M. at 361–62, 871 P.2d at 1367–68 (lien amount does not include attorney fees incurred by lienholder to recover payment).

III. CONCLUSION

10. We reverse the trial court's order denying indemnification to International. We remand to the trial court with instructions to determine the amount of International's equitable lien against Romero's judgment after offsetting a proportionate share of Romero's attorney fees. An amended judgment re-

flecting this determination shall then be entered. The parties shall bear their own costs on appeal.

11. IT IS SO ORDERED.

BOSSON and BUSTAMANTE, JJ., concur.