1997-NMSC-026

941 P.2d 498

**Crusita M. WRIGHT, Plaintiff–Petitioner,**

**v.**

**FIRST NATIONAL BANK IN ALBUQUERQUE, Defendant–Respondent,**

**and**

**Lovelace Healthcare System and the United States Department of the Air Force—CHAMPUS Program, Lienholders–Respondents.**

No. 23656.

Supreme Court of New Mexico.

May 19, 1997.

418

John R. Polk, Albuquerque, for Plaintiff–Petitioner.

Modrall, Sperling, Roehl, Harris & Sisk, Jay Frontinio, Max J. Madrid, Law Office of Manny M. Aragon, Calvin Wells, Albuquerque, Robert Colvin, White Sands Missile Range, for Respondents.

## OPINION

FRANCHINI, Chief Justice.

1 Crusita Wright sued the First National Bank of Albuquerque, presently known as First Security Bank, seeking damages for personal injury suffered when she slipped on ice, fell and was injured as she entered the Bank. Her recovery was insufficient to pay attorneys' fees, costs, and taxes, and to reimburse her insurer and Lovelace Healthcare System ("the Hospital") where she received treatment. On Wright's motion, the trial court apportioned her recovery, first deducting a fixed amount from each of the claims made by the insurer and the Hospital to cover their share of attorneys' fees, and then apportioning the remaining amount to the claimants. The apportionment resulted in a net loss to Wright. On appeal the Court of Appeals held: (1) that the insurer, the United States Military Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), was not entitled to any of the monies remaining in the common-fund obtained in plaintiff's judgment; and (2) that the Hospital should receive all the funds remaining in the fund pursuant to its hospital lien claim. Wright appeals to this Court. Because CHAMPUS is not a party to this appeal we do not reach point one; as to point two we reverse.

2 *Facts and Proceedings.* On December 7, 1992, Wright slipped on ice and fell on the walkway near the entrance to the First National Bank of Albuquerque. Following a bench trial, Wright was awarded $30,450.00. The trial court reduced the amount by fifty percent due to Wright's negligence. Wright was treated by the Hospital, which charged $5,705.16 for her care. CHAMPUS, under a contract with the Hospital, reimbursed the Hospital in the amount of $2,475.76.

3 CHAMPUS provided a detailed statement to Wright entitled "CHAMPUS Explanation of Benefits" ("the Explanation")

listing the amounts billed, the amounts not covered, and the amounts allowed under her insurance coverage. The total allowable amount was $3,270.76. Because Wright's arrangement with CHAMPUS required her to pay a cost-share of $795.00, CHAMPUS paid the Hospital $2,475.76—the allowed amount of $3,270.76 minus the cost-share amount of $795.00.

4 In the bottom quarter of the Explanation, in a separate box, printed in upper-case letters appeared the following remarks:

AMT ALLOWED IS BASED ON AN AGREEMENT BETWEEN THE GOVT & YOUR PROVIDER UNDER THE HEALTH CARE FINDER PGM, AND *IS PAYMENT IN FULL*, SUBJECT TO THE STANDARD COST–SHARES & DEDS. PLEASE NOTE: AMOUNT ALLOWED WAS CALCULATED USING DIAGNOSIS RELATED GROUPING (DRG) NUMBER 219[.] PAYMENT WAS MADE UNDER THE CHAMPUS DRG–BASED PAYMENT SYSTEM. BENEFICIARY LIABILITY IS LIMITED TO THE COST–SHARE AND CERTAIN NON–COVERED ITEMS, SUCH AS TELEPHONE CHARGES.

(emphasis added). At the Bottom of the Explanation was printed "payments are subject to the provision that the beneficiary cost-share is collected by the provider. The provider's failure to collect the cost-share can [be] considered a false claim and/or may result in reduction of payment."

5 Following its reimbursement by CHAMPUS, the Hospital filed a notice of hospital lien pursuant to the Hospital Lien Act ("the Act") in the amount of $2,561.36, and sometime later filed an additional lien in the amount of $242.43. CHAMPUS asserted a claim against the Bank under the Federal Medical Care Recovery Act, 42 U.S.C. § 2651, for inpatient hospital care for $2,475.76, representing the CHAMPUS payment.

6 Wright motioned the court to reduce the amount of liens for medical treatment by a pro-rata share of the attorneys' fees, taxes, and costs, and to equitably apportion the remaining proceeds between Wright, the Hospital, and CHAMPUS. The trial court

reduced the Hospital's claim and the CHAMPUS claim each by $1,000.00, representing the reasonable cost of attorneys' fees which the court determined would have been incurred in the usual collection process.

7 The Court of Appeals held that CHAMPUS was not entitled to any part of the common-fund since, under 42 U.S.C. § 2651, CHAMPUS had a cause of action against the Bank only, and could not proceed against Wright. The Court determined that the $1,505.85 remaining in the common-fund should be paid to the Hospital pursuant to its hospital lien claim. Although the Court agreed with Plaintiff, that she was "entitled to an equitable offset out of such fund for her attorney's fees and costs expended in obtaining such judgment," it determined that "this offset may effectively be matched by a like sum awarded to Lovelace for its attorney's fees and costs in seeking to enforce its lien." Lastly, the Court held that neither the Hospital nor CHAMPUS were precluded from seeking recovery for "additional amounts which may be owing to them."

■ 8 *Discussion.* Wright first argues that the Hospital was not entitled to file a lien under the Act, since her obligation to the Hospital was satisfied by the payment made by CHAMPUS. We agree. The Act is intended to provide a mechanism for hospitals to recover when a patient has not paid a hospital bill. Under the Act

[e]very hospital located within the state that furnishes emergency, medical or other service to any patient injured by reason of an accident ... is entitled to assert a lien upon that part of a judgment, settlement or compromise going, or belonging to such patient, less the amount paid for attorneys' fees, court costs and other expenses necessary thereto in obtaining the judgment, settlement or compromise. ...

NMSA 1978, § 48–8–1(A) (Repl.Pamp.1995). Under the Act, the lien would attach to any judgment, settlement, or compromise that Wright received from or reached with the Bank.

■ 9 In this case, the Hospital was not entitled to file a lien for $2,561.36 because Wright's hospital bill was paid by CHAM-

PUS. Following that payment, Wright owed only her cost-share amount of $795.00. Under the arrangement between CHAMPUS and the Hospital, CHAMPUS' $2,475.76 payment to Loveless constituted "payment in full, subject to standard cost-shares and ded[uctible]s." Wright's liability, then, as beneficiary, was limited "to the cost-share and certain non-covered items." There were no "non-covered items" included on the bill from the Hospital.

10  We find that a cost-share amount such as this one should not be considered part of the hospital bill such that a lien for that amount may be filed under the Act. The fact in this case that it is the Hospital's responsibility to collect the cost-share, and that failure to do so "can [be] considered a false claim," shows that the cost-share is different from an unpaid bill. After the payment made by CHAMPUS the only payment the Hospital was entitled to was the cost-share of $795.00. If the Hospital failed to collect the cost-share Wright owed nothing.

11  Wright argues that since the Hospital sought to recover from the common-fund it should pay its share of legal expenses under the common-fund doctrine. "Under this doctrine, an attorney who creates a pool of funds for a group has the right to seek payment from the pool or seek proportional contribution from those who accept the benefits of the attorney's efforts." *Martinez v. St. Joseph Healthcare System*, 117 N.M. 357, 360, 871 P.2d 1363, 1366 (1994) citing *Las Vegas Ry. & Power Co. v. Trust Co.*, 17 N.M. 286, 291–92, 126 P. 1009, 1010 (1912). In *Martinez* we applied the common-fund doctrine to require a hospital to pay its share of attorneys' fees when asserting a lien against Plaintiff's settlement. *Id.*

12  In this case, the Court of Appeals held that Wright was entitled to an equitable offset out of the common-fund for attorneys' fees and costs, stating that, "[u]nder the common-fund doctrine, third parties who share in the benefits recovered by the plaintiff are required to proportionately contribute to the payment of reasonable attorney fees and costs expended in obtaining a recovery." *Wright v. First National Bank*, 122 N.M. 34, 36, 919 P.2d 1099, 1101, (Ct.App.

1996) citing *Martinez*, 117 N.M. at 360–62, 871 P.2d at 1366–68; *Transport Indem. Co. v. Garcia*, 89 N.M. 342, 344, 552 P.2d 473, 475 (Ct.App.1976). However, the Court of Appeals went on to find that the Hospital was entitled to collect attorneys' fees in seeking to enforce its lien under Section 48–8–3(B). For this reason the Court "matched" the attorneys' fees, owed by Wright on the one hand, and the Hospital, on the other, and found that neither party owed attorneys' fees. Although the Act provides for attorneys' fees for the lienholder when these fees are incurred to enforce the lien, they are not allowable here where the Hospital is enforcing a lien which it was not entitled to file in the first place. Particularly here, where the Explanation states on its face that "the provider's failure to collect the cost-share can be considered a false claim and may result in reduction of payment," we will not allow attorneys' fees to be matched.

13  Because we find that the Hospital was not entitled either to assert nor to enforce its lien, and because we find that the Hospital failed to properly pursue the $795.00 cost-share owed to it by Wright, we find the Hospital owes attorneys' fees, costs and taxes proportionate to the amount it is due from the common-fund. We find that the Hospital's recovery of $795.00 equals five-and-two-tenths percent of the common-fund. We, therefore, deduct $713.40 (five-and-two-tenths percent of attorneys' fees, costs and taxes of $13,719.15) from the amount due the Hospital and award the Hospital $81.60 from the common-fund. The remaining $1,424.25 should be paid to Wright.

14  Lastly, Wright asks us to clarify that portion of the Court of Appeals opinion which states that "[n]othing in this opinion, however, is intended to preclude Lovelace or CHAMPUS from pursuing other appropriate legal remedies to recover any additional amounts which may be owing to them." Wright argues that this statement is inconsistent with our holding in *Martinez* that a hospital "lien is satisfied from the net proceeds of the settlement or judgment pursuant to the Act." 117 N.M. at 362, 871 P.2d at 1368. We agree. Following this opinion, neither the Hospital nor CHAMPUS may

proceed against Wright in connection with claims arising from the accident which formed the basis of the subject matter of this lawsuit. Her obligations to them have been fully satisfied.

15 *Conclusion.* We hold that where a Hospital has a contract with Plaintiff's insurer under which reimbursement by the insurer constitutes payment in full by the insured the only amount the Hospital is entitled to collect from the insured is any co-pay or cost-share payment due. Under these circumstances a hospital may not file a lien under the Act for any amounts disallowed by the insurer. Further we hold that where a private hospital seeks recovery from a common-fund or asserts a lien under the Act, and Plaintiff's recovery is insufficient to pay attorneys' fees and the hospital bill in full, the, hospital must pay a proportionate share of attorneys' fees incurred in obtaining the judgement settlement or compromise that created the common-fund. Finally we find that Plaintiff's obligation to the Hospital is satisfied by the net proceeds of the settlement. A hospital may not proceed against a Plaintiff for any "deficiency" that arises after the proceeds from a common-fund have been distributed.

16 IT IS SO ORDERED.

BACA and MINZNER, JJ., concur.