903 P.2d 834

**AMICA MUTUAL INSURANCE COMPANY, Plaintiff–Appellant and Cross–Appellee,**

v.

**Margaretta Coulter MALONEY, Defendant–Appellee and Cross–Appellant.**

**Roy SILVA and Betty Silva, individually and as parents of Roxanne Silva, Plaintiffs–Appellants,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, Defendant–Appellee.**

Nos. 21873, 21959.

Supreme Court of New Mexico.

Sept. 18, 1995.

524

Gallagher, Casados & Mann, P.C., Doris W. Eng, Albuquerque, for Appellant and Cross–Appellee.

John R. Tiwald, Albuquerque, for Appellee and Cross–Appellant.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, Steven L. Vogel, Albuquerque, for Appellants.

Pelton & O'Brien, P.A., Daniel J. O'Brien, James E. Lieuwen, Albuquerque, for Appellee.

Butt, Thornton & Baehr, P.C., John A. Klecan, Albuquerque, for amicus curiae N.M. Defense Lawyers.

William H. Carpenter, Michael B. Browde, Michael G. Elia, Albuquerque, for amicus curiae N.M. Trial Lawyers.

### OPINION

FROST, Justice.

1. *Amica Mutual Insurance Co. v. Maloney* and *Silva v. Farmers Insurance Co.* both present a common question on appeal: When an insurer has a subrogated interest in a portion of the insured's settlement, is the insurer required to pay a proportionate share of the insured's attorney's fees incurred in settling the claim? In both cases the insureds argue that the settlement created a common fund which included the insurers' subrogated interest. They therefore contend that the insurers were obligated to pay a proportionate share of the insureds' attorneys' fees. The insurers counter that they had adequately protected their respective subrogated interests without the efforts of the insureds' attorneys. The trial court in *Amica* found in favor of the insured. Conversely, in *Silva* the trial court found for the insurance company. We have consolidated the two cases for purposes of this opinion, and we affirm the proportionate award of attorney's fees for the settlement in *Amica* and reverse the corresponding denial of attorney's fees in *Silva*. We also affirm the trial court's denial of attorney's fees for the insureds' efforts in pursuing their claims for proportionate contribution in both cases.

## I.  FACTS

### A.  *Amica v. Maloney*

2. On June 18, 1989, Defendant–Appellee Margaretta Coulter Maloney (Maloney) was involved in an automobile accident in which her car was rear-ended. Maloney had an auto insurance policy with Plaintiff–Appellant Amica Mutual Insurance Co. (Amica) which provided for up to $5,000 in medical coverage. The Amica insurance policy expressly provided for subrogation of any amounts paid out under the policy and required that Maloney hold in trust any amount she recovered from a third party so that Amica could be reimbursed for payments made.

3. As a result of injuries suffered in the accident, Amica paid Maloney the full extent of her medical coverage under the policy, totalling $5,000. Maloney then hired an attorney and filed suit against the third-party tortfeasor and his insurer, Allstate. During the course of settlement negotiations between Maloney and Allstate, Amica sent Allstate four letters informing Allstate of its subrogated interest in Maloney's recovery and asking for reimbursement of the $5,000. Allstate ultimately settled with Maloney for $77,500. It issued two checks for the settlement amount, one of which was for $5,000, made payable to Maloney, her attorney, and Amica. Amica demanded that Maloney pay it the full $5,000 for its subrogated interest in the medical payment advances. Maloney countered that a prorated share of attorney's fees and costs should be deducted from the $5,000 to pay for Maloney's efforts in obtaining settlement. On October 14, 1992, Amica sued Maloney for breach of contract and conversion. After receiving briefing by both parties, the trial court awarded Maloney $1809.50 plus 36.19% of all accrued interest on the $5,000, which represented Amica's prorated share of attorney's fees.[1] Amica appealed the judgment.

### B.  *Silva v. Farmers*

4. On October 28, 1990, Betty Silva and her daughter Roxanne were involved in an automobile accident resulting in personal injury and property damage. Plaintiffs–Appellants Roy and Betty Silva (the Silvas) were insured by Defendant–Appellee Farmers In-

---

1. The trial court determined that Maloney's attorney's fees and costs amounted to 36.19% of the total judgment.

surance Co. (Farmers). Farmers' policy similarly furnished medical coverage up to $5,000 and provided for subrogation for amounts paid out under the coverage. The policy also required the Silvas to hold in trust any amount recovered from a third party for Farmers' subrogation interest.

5. Farmers paid the Silvas $1,811.20 for their medical expenses. The Silvas then hired an attorney to pursue their claim against the third-party tortfeasor and entered into negotiations with his insurer, which coincidentally was also Allstate. In June 1992 Allstate settled the Silvas' claim for $9,600. During the course of settlement negotiations, Farmers mailed out two form letters. It sent one to Allstate informing Allstate of its subrogation interest and asking for a separate settlement check. The other letter, sent to the Silvas' attorney, stated that Farmers was independently pursuing its subrogation rights and that the Silvas' attorney did not represent it.

6. After settlement Allstate sent out separate checks for Farmers' subrogated interest of $1,811.20 and for the remainder of the settlement award. The Silvas requested that Farmers endorse the check and return it to their attorney so that he could deduct a pro rata share of attorney's fees before reimbursement. Farmers refused, and the Silvas sued for breach of contract and bad faith. After the Silvas presented their case, the trial court directed a verdict for Farmers and awarded to it the entire $1,811.20. The Silvas then appealed the trial court's judgment.

## II. PROPORTIONATE CONTRIBUTION

### A. Subrogation

7. Both cases on appeal present us with the single question: whether an insurer's subrogation interest is subject to a proportionate set-aside of attorney's fees incurred by the insured in securing settlement. The facts are essentially undisputed, so we confine ourselves to examining whether the trial courts properly applied the law in these cases. *Investment Co. of the S.W. v. Reese,* 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994).

8. It is well settled that when an insurer pays the claim of its insured under the insured's policy, it "is deemed to be subrogated by operation of law to recovery of its payments against the person who caused the loss." *Safeco Ins. Co. v. United States Fidelity & Guar. Co.,* 101 N.M. 148, 149, 679 P.2d 816, 817 (1984); *see also United States Fidelity & Guar. Co. v. Raton Natural Gas Co.,* 86 N.M. 160, 162–63, 521 P.2d 122, 124–25 (1974). The doctrine of subrogation "is founded upon the relationship of the parties and upon equitable principles, for the purpose of accomplishing the substantial ends of justice." *Raton,* 86 N.M. at 162–63, 521 P.2d at 124–25 (quoting 6A Appleman, *Insurance Law and Practice* § 4054 at 142–44).

9. Ordinarily the right of subrogation allows an insurer who has fully compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer. *See White v. Sutherland,* 92 N.M. 187, 190, 585 P.2d 331, 334 (Ct.App.), *cert. denied,* 92 N.M. 79, 582 P.2d 1292 (1978). When the amounts paid by the insurer under the policy cover only part of the insured's loss, leaving an excess loss to be made good by the tortfeasor, the insured retains the right of action for the entire loss. *Krause v. State Farm Mut. Auto. Ins. Co.,* 184 Neb. 588, 169 N.W.2d 601, 604 (1969); *Sellman v. Haddock,* 62 N.M. 391, 393, 310 P.2d 1045, 1046 (1957), *overruled on other grounds by Safeco,* 101 N.M. at 150, 679 P.2d at 818. Thus, we have consistently held that when properly raised in a subsequent suit against the tortfeasor, the subrogated insurer is ordinarily considered an indispensable party. *Safeco,* 101 N.M. at 149, 679 P.2d at 817. In *Safeco* this Court set out the proper procedure for joining the subrogated insurer and described the role of the insurer in the litigation. *Id.* at 150, 679 P.2d at 818 (noting that insurer's presence as a party in the litigation should not be revealed to the jury, but that after judgment insurer can come forward and present evidence proving its subrogated interest).

10. We have also held that the insured is responsible for protecting the insurer's subrogated interest when pursuing its claim against the tortfeasor. *See Maldonado*

*v. Haney,* 94 N.M. 335, 336–37, 610 P.2d 222, 223–24 (Ct.App.1980); *see also Farmers Ins. Group v. Martinez,* 107 N.M. 82, 83–84, 752 P.2d 797, 798–99 (Ct.App.1988) (discussing insurer's right to sue tortfeasor when insured fails to protect insurer's subrogated interest). Accordingly, when the insured pursues its claim against the tortfeasor,

> the insured becomes a trustee and holds the amount of recovery, equal to the indemnity for the use and benefit of the insurer. [This] rule is founded on the principle that the wrongful act was single and indivisible, and gives rise to but one liability. Upon this theory the splitting of causes of action is avoided and the wrongdoer is not subject to a multiplicity of suits.

*Bowen v. American Family Ins. Group,* 504 N.W.2d 604, 605 (S.D.1993); *see also Krause,* 169 N.W.2d at 603–04 (noting that there is a single cause of action and finding that the insured must hold the amount of the subrogation claim for the benefit of the insurer and must account for this amount after recovering from the tortfeasor).

■ 11. Thus in insurance subrogation cases such as the ones presently before us, there is but one cause of action for the entire recovery, including the subrogated amount, and that cause of action lies in the name of the insured. The insurer is entitled to join with the insured and participate in settlement negotiations for the entire settlement amount, and it is entitled to intervene in any legal action. However, if the insurer chooses not to participate in settlement negotiations for the entire recovery, then it is properly deemed to be relying on the efforts of the insured to protect its subrogated interest. When the insured recovers from the wrongdoer, either by settlement or by judgment, he or she then holds the insurer's subrogated interest in trust.

## B. Common–Fund Doctrine

12. In *Martinez v. St. Joseph Healthcare System,* 117 N.M. 357, 360, 871 P.2d 1363, 1366 (1994), we stated that under the common-fund doctrine, "an attorney who creates a pool of funds for a group has a right to seek payment from the pool or seek proportional contribution from those who accept the benefits of the attorney's efforts." *Martinez* involved a hospital attempting to enforce its statutory hospital lien on a patient's tort settlement. After paying the entire lien, the patient's estate sued the hospital for a proportionate contribution for attorney's fees and costs incurred in reaching settlement. *Id.* at 358, 871 P.2d at 1364. We noted in *Martinez,*

> If the attorney for the patient does not secure a judgment or settlement, the hospital has nothing to which it may attach its lien.... In contrast, if the patient's attorney secures a judgment or settlement ..., the hospital recovers money due without expending its legal resources. If we did not allow division of legal costs, hospitals would be encouraged to sit back and reap the rewards of another's labor at that party's expense.

*Id.* at 361, 871 P.2d at 1365. We concluded that applying the common-fund doctrine was the most fundamentally fair approach. *Id.* at 360, 871 P.2d at 1364.

13. Similarly, in *Transport Indemnity Co. v. Garcia,* 89 N.M. 342, 344, 552 P.2d 473, 475 (Ct.App.), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1976), we applied the common-fund doctrine to a worker's compensation case in which the employer's insurer sought reimbursement from the claimant's successful recovery. We found that because the claimant "bore the burden of the expense and risk of litigation," it would be "unduly burdensome on the claimant" to pay all the costs and would "unjustly enhance the economic position of the carrier" not to assess a proportionate share of the expenses. *Id.* at 345, 552 P.2d at 476.

■ 14. The Silvas and Maloney now ask us to extend the application of the common-fund doctrine to insurance cases in which the insured incurs attorney's fees in recovering a judgment or settlement that benefits the subrogated insurer. We agree and join with the majority of jurisdictions that have considered this issue in extending the common-fund doctrine to the present cases. As one commentator noted,

> It is grossly inequitable to expect an insured, or other claimant, in the process of

protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share and fees must be paid by the insurer or may be withheld from its share.

8A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4903.85 (1981); *see also Principal Casualty Ins. Co. v. Norwood,* 463 N.W.2d 66, 68 (Iowa 1990) ("The general rule is that the insured may retain out of the fund recovered from the wrongdoer, after the payment of the policy, the costs and reasonable expenses incurred in the litigation, for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself."); *Bowen,* 504 N.W.2d at 606 ("The right to an attorney's fee follows as a matter of course, since the services rendered by the attorney are beneficial to the administration of the trust and the rights of the beneficiary and as such he is entitled to a proportionate award of an attorney's fee." (quoting *Krause,* 169 N.W.2d at 604)).

### C. Active Participant

15. This rule of attorney's fee apportionment, however, is not absolute. There are two equitable exceptions that an insurer may claim to avoid having to pay a pro rata share of the insured's attorney's fees and costs. The first is the active participation exception. Under this exception, if the insurer demonstrates that it *actively participated* in or *substantially contributed* to the recovery, the trial court may reduce or waive the insurer's proportionate contribution. *See County Workers Compensation Pool v. Davis,* 817 P.2d 521, 527 (Colo.1991) ("An insurer's active participation in the tort litigation, for example, and its significant contribution to a favorable judgment or settlement award would certainly be appropriate matters for a court to consider in determining whether, and if so in what manner, to apportion the litigation expenses between the insurer and the employee.").

16. Both insurers claim that they actively participated in securing their subrogation interest. Both point to the letters sent to the tortfeasors' insurer, Allstate, in which they asserted their subrogation interest. Both also claim that Allstate recognized their respective subrogation rights which were not in dispute. Both therefore argue that they took significant steps to protect their subrogated interest in the recovery.

17. Their arguments, however, misconstrue the nature of their subrogation claim. As discussed above, the net recovery from the tortfeasor is unitary, encompassing both the insured's reparation and the insurer's subrogated interest. Until the insured reaches a settlement with the tortfeasor, or receives a judgment on a claim, there is no final subrogated sum for the insurer to protect. Accordingly, in order for the insurer to claim active participation in a settlement, it must demonstrate that it participated in the settlement negotiations with the insured for the *entire* settlement and substantially contributed to that *total* settlement award. Similarly, to show active participation in a judgment against the tortfeasor, the insurer must show that it intervened in the suit and participated in the case under the procedures delineated in *Safeco,* or at the very least demonstrate that it significantly contributed to discovery.

18. As for the actions taken in the present case, the insurers followed normal industry practice by sending to the tortfeasors' insurer what were essentially form letters stating that they had a subrogation interest and asking for repayment after settlement. Amica and Farmers then sat back and waited for their insureds to reach a settlement before asserting their rights to their subrogated interest in full. The insurers neither participated in the negotiations between the insured and the tortfeasor nor contributed to the final settlement. For the reasons discussed above, we conclude as a matter of law that Amica's and Farmers' actions in sending out standard letters informing the tortfeasors' insurers of their subrogated interest did not amount to active participation in the settlement.

### D. Equitable Reduction in Attorney's Fees

19. An insurer may also ask the court to reduce the amount of proportional attorney's fees it owes by demonstrating that the attorney's fee is unfair. The insurer's right to claim a reduction in fees arises from the fact that the insurer is not contractually bound by the fee agreement between the insured and his or her attorney. The insured's attorney's fees are apportioned to the subrogated insurer in equity. Thus if the insurer can demonstrate that the fees assessed are excessive and inequitable, the court may reduce them accordingly. One determinative factor in making such an evaluation is whether the attorney's fee agreement with the insured is consistent with customary fee arrangements in the legal profession.

20. Both Amica and Farmers contend that the efforts of the insured's attorney were unnecessary to secure the subrogation interest. Both argue that their interest was fully acknowledged by the tortfeasors' insurer and that the amount was not in dispute. The insurers therefore contend that the insureds' attorneys should be awarded no fee for securing the subrogation interest.

21. Once again the insurers' argument fails to take into account that the recovery is unitary. In order to determine whether an attorney's fee is unreasonable, the court must review it in light of all of the attorney's efforts expended in achieving the entire settlement, not just in protecting the insurer's subrogation interest. However, neither of the insurers has presented any evidence that the contingency fees assessed by the insureds' attorneys were unreasonable or inequitable in relation to the amount of work done in securing the final settlements. Nor do they suggest that the attorneys' contingency fee agreements were inconsistent with the standard industry practice in such cases.

22. Finally, Amica and Farmers argue that public policy militates against the decision we announce today. Both contend that they will be forced to pay for litigation over which they have no control. They also contend that although they are saddled with the insureds' costs, the insureds bear no expense other than that for their own recovery.

23. However, as the Arkansas Supreme Court aptly pointed out,

> The [insurer's] real grievance lies in having to pay a fee to an attorney not of its own choice. Subrogation, however, is governed by equitable principles. If the [insurer] had employed its own attorney and had actively participated in the action against [the tortfeasor] it could not fairly have been compelled to contribute to [the insured's attorney's] fee. But when the insurance company has benefited from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense.

*Washington Fire & Marine Ins. Co. v. Hammett,* 237 Ark. 954, 377 S.W.2d 811, 813 (1964) (citations omitted). Indeed, it is interesting to note that the insurance policies of both insurers contractually obligate the insured to do whatever is necessary to help the insurer recover its subrogation interest and to hold any recovery in trust. Both insurance policies mirror the equitable principles we apply today and impose a duty on the insured to protect the insurer's interests. Accordingly, we reject the insurers' suggestion the insureds have no obligation to protect the insurers' rights. *See Martinez,* 107 N.M. at 83–84, 752 P.2d at 798–99 (discussing relationship between subrogated insurer and insured).

### III. CROSS–APPEAL FOR STATUTORY ATTORNEY'S FEES

24. On cross-appeal, Maloney argues that she is entitled to an award of attorney's fees for this action to recover Amica's proportionate share of fees and costs from its subrogated interest. Maloney relies on NMSA 1978, § 39–2–1 (Repl.Pamp.1991), which provides,

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the

insurer acted unreasonably in failing to pay the claim.

Maloney points to the trial court's finding that Amica unreasonably refused to pay the equitable apportionment of the subrogation interest and contends that the trial court abused its discretion in not awarding attorney's fees under Section 39–2–1.

25. Amica counters that the term "first party coverage" applies to the underlying claim for coverage under a policy and not to a subsequent dispute over the amount of subrogation interest which the insurer is entitled to receive. Amica argues that because it promptly paid Maloney the full extent of the medical coverage to which she was entitled under her policy, its actions do not fall within Section 39–2–1.

26. In construing a statute, our primary goal is to further the legislature's intent. In order to determine legislative intent, we look to the language used in the statute and apply its ordinary meaning, unless a different intent is clearly expressed. *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 251, 837 P.2d 442, 445 (1992). At issue here is the proper meaning of the term "first party coverage." We agree with Amica that the term "first party coverage" applies to the underlying policy coverage and not to subsequent issues of proportionate contribution of attorney's fees. We note that the legislature opted to use the limiting phrase "an insurer who has not paid a claim on any type of first party coverage" as opposed to simply stating "an insurer who has not paid any type of claim."

27. The purpose of this provision is to encourage insurers to pay out injury or damage claims promptly without placing on their insureds the unreasonable burden of having to bring a lawsuit to collect what they are entitled to under the policy in order to make themselves whole. However, the provision is not aimed at holding out the threat of an award of attorney's fees any time an insurer challenges any issue. The statute is simply designed to encourage insurers to resolve any doubt in favor of the insured and to pay off the claim quickly in order to make the insured whole after a loss. Section 39–2–

1 accomplishes this goal by punishing an insurer's unwarranted recalcitrance in paying a claim by awarding attorney's fees to the insured for his or her efforts in collecting benefits. However, these considerations do not apply once the insured has been fully compensated consistent with the terms of the policy.

28. In the present case the parties do not dispute that Amica promptly paid out Maloney's claim under her insurance policy. Indeed, at the time this suit was brought, Maloney had already been paid by Amica and was holding Amica's subrogated interest in trust. What is in dispute is whether Amica is obligated to pay Maloney's attorney a proportionate fee for creating a common fund. However, as discussed above, Amica's liability for attorney's fees arises not out of its insurance contract with Maloney but out of equitable trust principles governing the creation of a common fund. Thus, although Maloney labels Amica's demand for its full subrogation interest a "failure to pay the insured's claim for first party coverage" under Section 39–2–1, Amica's actions really amount to a failure to pay the insured's attorney in equity for services rendered. However, a subsequent claim for attorney's fees based in equity is distinct from an initial claim for coverage under the insured's policy since there is no longer a concern that the insured will go uncompensated despite having paid the insurer's premiums. Accordingly, we find that Amica's actions do not constitute nonpayment of a claim of first party coverage as contemplated by the statute. Maloney is not entitled to attorney's fees under Section 39–2–1.

29. The Silvas also have demanded attorney's fees for the underlying action in this appeal, based on Section 39–2–1 and for violations of Article 16 of the New Mexico Insurance Code, NMSA 1978, Section 59A–16–1 to –30 (Repl.Pamp.1995). For the reasons discussed above, the Silvas are not entitled to attorney's fees under Section 39–2–1. Additionally, because this issue has not previously been addressed by New Mexico courts and was open to legitimate debate, we find that the trial court's finding that Farmers' conduct was reasonable and did not violate

Section 59A–16–30 is supported by substantial evidence. *See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.,* 112 N.M. 89, 96, 811 P.2d 899, 906 (1991) (noting appellate court determines if substantial evidence exists to support verdict after viewing facts most favorable to appellee).

## IV. CONCLUSION

30. We hold that the common-fund doctrine is applicable to insurance cases in which the insured incurs attorney's fees in recovering a judgment or settlement which benefits the subrogated insurer. Accordingly, the insured is entitled to set aside a proportionate share of attorney's fees and costs from the insurer's subrogation interest, subject to the equitable considerations discussed above. We therefore affirm the trial court's award of a proportionate share of attorney's fees in *Amica v. Maloney* and reverse the denial of fees in *Silva v. Farmers* and remand for an award of a proportionate share of attorney's fees, costs, and interest consistent with this opinion. We also reject both insureds' request for an award of attorney's fees in pursuing these claims.

31. **IT IS SO ORDERED.**

RANSOM, J., and PATRICIO M. SERNA, District Judge, concur.