1998-NMCA-064

958 P.2d 1239

**HEALTH PLUS OF NEW MEXICO, INC., Plaintiff–Appellee/Cross–Appellant,**

v.

**James HARRELL, Defendant–Appellant,**

and

**City of Albuquerque, a municipal corporation, Defendant/Cross–Appellee.**

No. 17677.

Court of Appeals of New Mexico.

March 18, 1998.

Certiorari Denied May 5, 1998.

Travis R. Collier, Deborah E. Mann, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellee/Cross–Appellant.

Charles G. Berry, Charles G. Berry & Associates, P.A., Albuquerque, for Appellant.

Edwin Macy, City of Albuquerque, Albuquerque, for Cross–Appellee.

## OPINION

ALARID, Judge.

{1} Insured party (Harrell) appeals the trial court's determination that it has a contractual and legal duty to hold settlement funds for the insurer (Health Plus). Health Plus cross-appeals the trial court's determination that its claim of subrogation against the City of Albuquerque (the City) was barred by the two-year Tort Claims Act statute of limitations. NMSA 1978, § 41–4–15(A) (1977). Health Plus appealed against the City; Harrell responded to Health Plus' appeal. Because Harrell's answer brief advocates the City's position, we evaluate this response as the City's. We affirm in part and reverse in part and remand to the trial court for further proceedings consistent with this opinion.

*FACTS*

{2} This case involves Health Plus' subrogation claim against the City and a reimbursement claim against Harrell. On July 6, 1990, Harrell and a City bus driver were in an automobile accident. Harrell was injured as a result of this accident. Health Plus insured Harrell and paid Harrell's medical bills totaling $21,141.63. On March 30, 1992, Harrell filed suit against the City asserting that the City was responsible for Harrell's injuries. Health Plus notified both Harrell and the City of its right of subrogation within ninety days of the accident as required by the Tort Claims Act, NMSA 1978, § 41–4–16(A) (1977).

{3} On December 21, 1992, Harrell settled its case with the City for $150,000. At that time he and the City did not notify Health Plus or include it in the settlement agreement. Health Plus then made demand for payment upon both Harrell and the City; both refused to pay. Health Plus filed this suit to recover upon its right of subrogation.

{4} The insurance policy issued by Health Plus provides that:

A. The benefits under this Contract will be available to a Member who is injured by the act or omission of another.... If the Member receives benefits under this Contract for treatment of such injuries, HPNM [Health Plus] will be subrogated to the rights of the Member ... to the extent of all such payments made by HPNM for such benefits. By way of illustration only, such subrogated rights include the Member's rights to recover for per-

sonal injuries sustained in a car accident. The Member agrees to execute and deliver to HPNM such instruments and papers as may be necessary to secure such rights.

**B. Collection by Member or Representative**

Any sums collected by or on behalf of the Member ... for benefits provided by HPNM shall be payable to HPNM. When reasonable collection costs and reasonable legal expenses have been incurred in recovering sums which benefit both Member and HPNM, whether incurred in an action for damages or otherwise, there shall be an equitable division of such collection costs and legal expenses.

{5} When the City and Harrell settled the suit, they agreed to exclude Health Plus from the agreement. The City had wanted to include Health Plus. However, Harrell did not want the amount owed to Health Plus to reduce his award. Harrell and the City determined that the two-year Tort Claims Act statute of limitations barred Health Plus' claim of subrogation. Section 41–4–15(A). Because of the statute of limitations, the City agreed to settle Harrell's claim without Health Plus' involvement, if Harrell agreed to release the City and to indemnify and defend the City if Health Plus later filed suit against it. Harrell agreed to these terms.

*DISCUSSION*

**I. Harrell's Appeal**

█ {6} On appeal, Harrell asserts that Health Plus has neither a contractual nor legal right of subrogation against Harrell and that Harrell has neither a legal nor contractual duty to hold funds in trust for Health Plus. Health Plus argues that these two provisions created a contractual duty by Harrell to reimburse Health Plus for the payment of Harrell's medical expenses and created a contractual right of subrogation against the City. We agree. When a party is challenging a conclusion of law, the standard of review is whether the trial court correctly applied the

law to the facts, viewing the facts in a light most favorable to the prevailing party. *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 287, 639 P.2d 569, 574 (1982). Health Plus relies on *Amica Mutual Insurance Co. v. Maloney,* 120 N.M. 523, 527, 903 P.2d 834, 838 (1995), to support the trial court's determination that Harrell did in fact have a legal duty to safeguard the interests of Health Plus. In *Amica,* 120 N.M. at 527, 903 P.2d at 838, the New Mexico Supreme Court held that an insured is responsible for protecting the insurance company's interest when pursuing a claim against a third party tortfeasor. "[T]he insured becomes a trustee and holds the amount of the recovery, equal to the indemnity payment [by the insurance company] for the use and benefit of the company." *Id.* at 528, 903 P.2d at 839 (quoting *Bowen v. American Family Ins. Group,* 504 N.W.2d 604, 605 (S.D.1993)).

{7} Harrell attempts to distinguish *Amica* from the case at hand. Harrell points out the fact that in *Amica* there was a provision in the insurance contract that required that the insured hold the money in trust for the insurance company. *See id.* at 526, 903 P.2d at 837. Although the language in Amica is different from the language in the Health Plus contract, the language of the Health Plus contract also imposes a legal duty upon Harrell to reimburse Health Plus. The contract provides that "[i]f the Member [Harrell] receives benefits under this Contract for treatment of such injuries, HPNM [Health Plus] will be subrogated to the rights of the Member ... [and] [a]ny sums collected by or on behalf of the Member ... for benefits provided by HPNM shall be payable to HPNM."

{8} Harrell relies on *Aetna Casualty & Surety Co. v. Saul,* 422 So.2d 497, 499 (La.Ct. App.1982), where the court did not allow an insurance company to recover from the insured when the insured had recovered from the third party tortfeasor. We elect not to follow *Saul,* as it relied on facts distinguishable from the present case. In *Saul,* there was explicit evidence in the record that settlement of the insured and the tortfeasor did

not include money paid by the insurance company under the insurance contract. *Saul,* 422 So.2d at 499. The *Saul* tortfeasor paid for the pain and suffering of the insured, not for the damage to the car that the insurance company had already paid. *Id.* Here, the settlement between Harrell and the City was for all claims and demands and all injuries known and unknown. Health Plus paid Harrell for the medical expenses he incurred as a result of his injuries. The settlement agreement clearly covers all damages, including the amount paid by Health Plus for Harrell's medical expenses.

■ {9} Harrell also contends that because Health Plus did not participate or try to intervene in the settlement negotiations, Health Plus is not entitled to recover the indemnity payment. However, when an insurance company chooses not to participate in the suit or settlement, it is assumed that it is relying on the actions of the insured. *Amica,* 120 N.M. at 528, 903 P.2d at 839. Thus, Health Plus did not have a duty to intervene in the suit or the settlement agreement in order for Harrell to have a duty to safe keep the money that he should have paid to Health Plus.

{10} Harrell disputes the trial court's determination that he had a contractual duty to hold funds for Health Plus. Generally, courts interpret insurance contracts in the same manner as all contracts. *Crow v. Capitol Bankers Life Ins. Co.,* 119 N.M. 452, 456, 891 P.2d 1206, 1210 (1995). The contracts are "interpreted by their own terms and conditions." *Id.* When construing the language of an insurance contract, the plaintiff has the burden of showing that the language of the contract is ambiguous. *See* 14 Tx.Jur.3d, Contracts § 336 (Kevin L. Taylor, ed., 1981 and Supp.1997). If the language is ambiguous, however, the court must construe the contract in favor of the insured. *Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n,* 113 N.M. 162, 167, 824 P.2d 302, 307 (1992). The language in the insurance contract between Hattell and Health Plus is unambiguous. Health Plus agreed to pay for Harrell's

medical bills and in turn Harrell agreed to repay Health Plus for the amounts paid under the policy. The language of the contract Harrell entered binds him. Harrell clearly has a contractual duty to repay Health Plus for any money he recovered from the City for his medical expenses.

## II. Health Plus' Cross–Appeal

{11} In its cross-appeal, Health Plus asserts that the trial court erred in concluding that the statute of limitations barred its suit against the City and that it erred in concluding that the City is immune from suit based upon a claim of constructive fraud. Health Plus believes that the statute of limitations began to run in December of 1992 when the City and Harrell settled Harrell's claim without providing for Health Plus' subrogation rights.

■ {12} Initially, we must determine whether Health Plus had a right of subrogation. When an insurance company pays the claim of its insured, it is considered subrogated to recovery of its money against the person who caused the injury. *State v. Brooks,* 116 N.M. 309, 315, 862 P.2d 57, 63 (Ct.App. 1993), *aff'd in part, rev'd in part, State v. Brooks,* 117 N.M. 751, 877 P.2d 557 (1994). The right of subrogation allows the insurance company, which has compensated the insured, "to step into the shoes of the insured and collect what it has paid" to the insured from the third party tortfeasor. *Amica,* 120 N.M. at 527, 903 P.2d at 838. Health Plus paid Harrell's claim and thus, had a right of subrogation against the City, which was the tortfeasor.

■ {13} Generally, when an insured and a third party settle a claim, it will not destroy the insurance company's right of subrogation. This Court has previously recognized that settlement does not destroy the insurance company's right of subrogation if the tortfeasor knows of the company's right of subrogation and the company does not consent to the settlement. *Farmers Ins. Group of Cos. v. Martinez,* 107 N.M. 82, 84,

752 P.2d 797, 799 (Ct.App.1988). Despite the release and settlement agreements signed by Harrell, they did not destroy Health Plus' right of subrogation. Health Plus did not consent to the settlement and the City had knowledge of Harrell's right of subrogation.

■ {14} Health Plus clearly had a right of subrogation and a right to sue the City. The question now becomes whether the statute of limitations had run on Health Plus' claim against the City. Hattell asserts that the City is protected by the Tort Claims Act. NMSA 1978, §§ 41–4–1 to 27 (1953, as amended through 1996). The Tort Claims Act provides that suits against a governmental entity are forever barred if not commenced within two years after the incident causing injury. Section 41–4–15(A). Harrell correctly asserts that this two-year statute of limitations began to run on the date of the automobile accident, not the date of the settlement between Harrell and the City as Health Plus asserts. *See id.* (action must be commenced "within two years after the date of the occurrence results [which] results in loss, injury or death").

■ {15} The statute of limitations begins to run on a subrogated insurance company's action against the third party tortfeasor when the insured's cause of action arises. This rule exists because a subrogated insurance company is considered to be standing in the shoes of the insured. By standing in the shoes of the insured, the insurance company has the same rights and is subject to the same defenses as the insured *American Gen. Fire & Cas. Co. v. J.T. Constr. Co.*, 106 N.M. 195, 196, 740 P.2d 1179, 1181 (Ct.App.1987), *see generally* Jane Massey Diaper, Annotation, *When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third–Party Tortfeasor*, 91 A.L.R.3d 844, §§ 2–3 (1980 and Supp.1997).

■ {16} Under the Tort Claims Act, the injured party has two years to file its claim. Harrell filed within this proscribed period. Additionally, Health Plus gave the City notice of its right of subrogation within 90 days as is also required by the Tort Claims Act. *See* § 41–4–16(A). By Harrell filing suit against the City and Health Plus giving notice of its right of subrogation, Health Plus' rights under the Tort Claims Act were protected and the two-year statute of limitations did not run. Because we hold that the statute of limitations did not run, Health Plus can recover contractually from Harrell or statutorily from the City. Health Plus, however, cannot recover from both the City and Harrell. *See Amica*, 120 N.M. at 527, 903 P.2d at 838. This would lead to double recovery and unjust enrichment. Health Plus must choose one. If Health Plus chooses to seek subrogation from the City, the City has a contractual right of indemnification against Harrell provided for in the settlement agreement between Harrell and the City. If Health Plus seeks reimbursement from Harrell, Harrell may not seek contribution from the City because the City already paid Harrell and Harrell released the City from any further payment or liability.

■ {17} Last, Health Plus contends that the City may also be culpable for constructive fraud. However, in order for Health Plus to sue the City, the City's sovereign immunity must be abrogated by one of the provisions of the Tort Claims Act. Constructive fraud is not one of the activities for which the City has waived its immunity to suit. *See* §§ 41–4–5–12. Therefore, the City is immune to Health Plus' claim of constructive fraud.

{18} Even if the City was subject to suit for constructive fraud, Health Plus would have to prove " 'a breach of a legal or equitable duty which the law declares fraudulent because of its tendency to deceive others.' " *Parker v. E.I. Du Pont de Nemours & Co.*, 121 N.M. 120, 132, 909 P.2d 1, 13 (Ct.App. 1995) (quoting *Barber's Super Mkts. Inc. v. Stryker*, 84 N.M. 181, 186, 500 P.2d 1304, 1309 (Ct.App.1972)). Although Health Plus asserts that the actions of the City were done due to the "anticipat[ion] that Health Plus might discover the settlement and attempt to assert its rights at a later date," after review

of the record, taking the facts in light most favorable to the prevailing party, we find that the trial court did not err in determining there was not enough evidence to support a claim of constructive fraud.

*CONCLUSION*

{19} For the above reasons, we affirm the trial court's judgment against Hattell and we reverse the trial court's dismissal of Health Plus' suit against the City and remand for entry of judgment consistent with this opinion. On remand, the judgment shall reflect that Health Plus may choose to recover on that judgment from either Harrell of the City, but not from both.

{20} **IT IS SO ORDERED.**

APODACA and WECHSLER, JJ., concur.