**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CITY OF HOBBS,

      Plaintiff - Appellee/
      Cross-Appellant,

      v.

NUTMEG INSURANCE COMPANY,

      Defendant-Appellant/
      Cross-Appellee.

Nos. 99-2308
and 99-2318

D. New Mexico

(D.C. No. CIV-95-79-PJK)

**ORDER AND JUDGMENT**   *

Before **TACHA** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

Nutmeg Insurance Company appeals from the denial of various post-trial motions following a jury verdict awarding Nutmeg's insured, the City of Hobbs, $1,562,591.84 in compensatory damages and $1 million in punitive damages for Nutmeg's bad faith in failing to settle a claim against the City. It also appeals the district court's award of prejudgment interest on the compensatory damage award.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The City cross-appeals the district court's denial of its motion for attorney's fees. We affirm in part, reverse in part, and remand this case.

## BACKGROUND

The complicated history of this case began with the shooting of twenty-three-year-old Jorge Perez by City police officer Ben Harrison. On December 25, 1991, City police officers responded to a report of a domestic disturbance at the home of Mr. Perez' mother-in-law. When Officer Harrison and Officer Jim Bob Hardy arrived at the home, they encountered Mr. Perez, holding an object later determined to be a 2x4 piece of lumber approximately ten feet long. Mr. Perez moved towards the officers, shouting obscenities. Officer Harrison fired twice at Mr. Perez, hitting him once in the chest. Mr. Perez died shortly thereafter, leaving behind his wife and three-year-old son.

The City carried liability insurance with Nutmeg. The policy in effect at the time of the shooting contained a $300,000 limit for claims arising under New Mexico law and a $1,000,000 limit for other claims. Under the policy, Nutmeg had the right and duty to defend any claim or suit seeking damages covered by the policy and the discretion to investigate any occurrence and settle any claim. The City immediately notified Nutmeg about the shooting incident.

Nutmeg assigned one of its adjusters to the Perez shooting, who then retained an attorney to defend Officer Harrison and the City against any claim by the Perez estate. Meanwhile, Mr. Perez' widow hired an attorney who filed suit in federal district court on January 23, 1992, on behalf of the Perez estate and Mr. Perez' young son. The suit sought damages under § 1983 and included a variety of New Mexico state law claims. At one point, Mrs. Perez' attorney, Mr. Hall, told Nutmeg that he would recommend to his client that she accept any settlement offer over $600,000. Nutmeg then offered her $50,000. No settlement occurred.

The case went to trial and the jury ultimately returned a verdict against the City for $3.3 million, which settled on appeal for $2.7 million. Of that amount, the City paid the estate $1,562,591.84.

The City then filed this action against Nutmeg in New Mexico state court for breach of contract, bad faith, and unfair claims practices. Nutmeg removed the case to federal district court on diversity grounds. The district court granted Nutmeg's motion for summary judgment on the City's claims for breach of contract and unfair claims practices, but denied summary judgment on the bad faith claim. At the close of the City's case, the district court ruled that the City had failed to make out a prima facie case for punitive damages. At the close of all the evidence, the district court granted Nutmeg's motion for judgment as a matter of law on the ground that there was insufficient evidence of bad faith. On

appeal, we reversed that conclusion, holding that the evidence could support a bad faith claim.   City of Hobbs v. Hartford Fire Ins. Co.   , 162 F.3d 576, 586 (10th Cir. 1998).

Following remand, Nutmeg filed a motion in limine to exclude evidence of punitive damages on the ground that, because the City had not appealed the ruling in the first trial that the City had failed to make out a prima facie case for punitive damages, that earlier ruling was law of the case and precluded a claim for punitive damages on remand.  The district court denied the motion, concluding that "[u]pon retrial, the availability of punitive damages remains intertwined with issues of liability and should be considered res nova."  Order at 1, Appellant's App. Vol. I  at 205.

On retrial, after the City rested its case, and again at the close of all evidence, Nutmeg moved for judgment as a matter of law on the City's punitive damages claim.  The district court denied both motions.  At the conclusion of the trial, Nutmeg objected to a proposed jury instruction that punitive damages could be awarded if Nutmeg acted in bad faith.  The court denied that motion.

The jury concluded that Nutmeg had acted in bad faith and awarded $1,562,591.84 in compensatory damages and $1 million in punitive damages.  The court then awarded prejudgment interest on the compensatory damage award at 15% from November 17, 1994, the date the City paid its portion of the Perez

judgment.  It awarded prejudgment interest under N.M. Stat. Ann. § 56-8-3, on the theory that this case is "analogous to one 'on money received to the use of another and retained without the owner's consent expressed or implied.'" Memorandum & Order at 4,   id. at 333 (quoting N.M. Stat. Ann. § 56-8-3(B)). [1]

Nutmeg filed motions to reconsider and for judgment notwithstanding the verdict.  The City filed a motion for attorney's fees.  The district court denied all motions, and this appeal followed.  Nutmeg argues:  (1) the City is not entitled to punitive damages because there was no evidence that Nutmeg acted in reckless disregard of the City's rights; (2) the City's punitive damages claim is barred by the law of the case doctrine because the City failed to appeal the district court's ruling in the first bad faith trial that it failed to make out a prima facie case for punitive damages; (3) in light of pertinent New Mexico Supreme Court authority, the district court erred in instructing the jury that it could award punitive damages if Nutmeg acted in bad faith alone; (4) the district court erred in awarding prejudgment interest under N.M. Stat. Ann. § 56-8-3(A) which allows prejudgment interest "on money due by contract," or § 56-8-3(B) which allows prejudgment interest "on money received to the use of another and retained

_____

[1]This articulation of the basis for the award of prejudgment interest is in the district court's order denying various post-trial motions, including Nutmeg's argument that the prejudgment interest award was improper.

without the owner's consent expressed or implied." The City cross-appeals the denial of attorney's fees.

**DISCUSSION**

**1. Punitive Damages Claims**

Nutmeg appeals the district court's denial of its motion for judgment notwithstanding the verdict on the punitive damages claims. We review de novo the denial of a motion for judgment notwithstanding the verdict. See Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996). In a diversity case like this, we must apply the substantive law of the state and federal procedural law. See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency, 174 F.3d 1115, 1118 (10th Cir. 1999). We must apply state law as announced by the state's highest court. See Blackhawk-Central City Sanitation Dist. v. American Guar. & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000). If the state's highest court has not yet ruled on an issue, "we seek to predict how that court would decide the question." Id.

**A. Availability of punitive damages in second trial**

Nutmeg argues that the City is barred from even seeking punitive damages in this case because it failed to appeal the district court's ruling in the first bad

faith trial that the City failed to establish a prima facie case for punitive damages.

We disagree. In  Wheeler v. John Deere Co.  , 935 F.2d 1090 (10th Cir. 1991), we

stated that:

> To "reverse" a judgment means to overthrow, vacate, set
> aside, make void, annul, repeal or revoke it. A judgment
> reversed by a higher court is without any validity, force,
> or effect, and ought never to have existed. Reversal of a
> judgment and remand for a new trial places the parties in
> the same position, insofar as relief is concerned, as if the
> case had never been tried.

Id. at 1096 (citations and quotations omitted). On retrial, the issue of the

availability of punitive damages was available.

## B. Jury instruction on punitive damages

The district court relied upon a New Mexico Uniform Jury Instruction, UJI

13-1718, in instructing the jury on punitive damages. [2] That instruction states:

> If you find that plaintiff should recover compensatory damages
> for the bad faith actions of the insurance company, then you may
> award punitive damages.
>
> Punitive damages are awarded for the limited purposes of
> punishment and to deter others from the commission of like offenses.
>
> The amount of punitive damages must be based on reason and
> justice, taking into account all the circumstances, including the

---

[2]The City argues that Nutmeg's objection to the punitive damage instruction was not sufficiently specific under Fed. R. Civ. P. 51. Given our resolution of this case, we need not address this issue.

nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the compensatory damages and injury.

N.M. Uniform Jury Instruction 13-1718. The Directions for Use of that instruction, adopted effective November 1, 1991, states, "[t]his instruction must be given in every action under UJI 13-1702, 13-1703 and 13-1704 [bad faith failure to settle]. Because this instruction is complete on the availability of punitive damages in insurance bad faith actions, UJI 13-1827 is unnecessary and should not be given in such cases." UJI 13-1827 is the general punitive damages jury instruction, which, according to its Directions for Use, "provides a general framework for a punitive damage instruction usable in any civil action involving direct or vicarious claims for punitive damages." Those Directions further specifically state, "[s]ome other chapters of UJI Civil contain punitive damage instructions specifically applicable to particular causes of action which should be used where appropriate. *See, e.g.,* UJI 13-861 (contracts and UCC sales) and 13-1718 (insurance bad faith)." These Direction for Use were reissued when UJI 13-1827 was amended on July 1, 1998.

Nutmeg appears to argue that UJI 13-1718 is based upon the New Mexico Supreme Court's statement in Jessen v. National Excess Ins. Co., 776 P.2d 1244, 1246 (N.M. 1989), that "[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages." (citing United Nuclear Corp. v. Allendale

Mut. Ins. Co. , 709 P.2d 649, 654 (N.M. 1985)).  It now argues that the New Mexico Court of Appeals has held that two New Mexico Supreme Court cases have altered the standard for assessment of punitive damages by requiring something more than just bad faith.  Nutmeg argues those cases establish that, in addition to bad faith, a plaintiff seeking punitive damages must also show that the insurer engaged in malicious, reckless or wanton conduct.     See Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co.   , 985 P.2d 1183 (N.M. Ct. App. 1999) (discussing Paiz v. State Farm Fire & Casualty Co.   , 880 P.2d 300, 308 (N.M. 1994) and Allsup's Convenience Stores, Inc. v. North River Ins. Co.    , 976 P.2d 1 (N.M. 1998)),  cert. denied , (July 27, 1999).

New Mexico's rules of civil procedure provide that:

[w]henever New Mexico Uniform Jury Instructions Civil contains an instruction applicable in the case and the trial court determines that the jury should be instructed on the subject, the UJI Civil shall be used unless under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the trial court so finds and states of record its reasons.

Rule 1-051(D) NMRA.  However, the UJI must accurately reflect current state law, and a change in the law may necessitate a deviation from a UJI.     See Brooks v. K-Mart Corp.  , 964 P.2d 98, 101 (N.M. 1998).

The district court determined that UJI 13-1718, the instruction it gave, was properly given and correctly reflected New Mexico law.  The district court gave a number of reasons for this conclusion:

(1) the New Mexico Supreme Court has not explicitly held that Jessen or United Nuclear have been overruled with respect to their statement that bad faith is a sufficient basis for an award of punitive damages.

(2) Paiz really only held that punitive damages could not be predicated solely on gross negligence, defined at that time as "a failure to exercise even slight care," without evidence of an "evil motive" or "culpable mental state." Paiz, 880 P.2d at 308. The instruction given in this case did not attempt to predicate punitive damages liability on negligence of any kind.

(3) Paiz was decided in 1994, yet the 1998 revision of UJI 13-1827 (the general punitive damages instruction) rewrote the "Directions for Use" to still expressly refer to UJI 13-1718 as the proper instruction for punitive damages in bad faith insurance cases.

(4) while Paiz expressly overruled and modified 13-1827, no court has expressly overruled or modified 13-1718.

(5) Paiz cited Linthicum v. Nationwide Ins. Co., 723 P.2d 675 (Ariz. 1986), in which the Arizona Supreme Court held that "before a jury may award punitive damages there must be evidence of an 'evil mind' and aggravated and outrageous conduct." Id. at 680. The district court noted that the Paiz court only cited Linthicum "in rejecting gross negligence as a standard for punitive damages because conscious wrongdoing is required." Memorandum & Order at 12,

- 10 -

Appellant's App. Vol. I at 341. The court further opined that "the Paiz court did not endorse" the Linthicum holding that punitive damages could not be awarded merely based upon the tort of bad faith.

(6) Allsup's does not alter this analysis because: Allsup's involved two due process challenges to the instructions on punitive damages in that case. The insurer argued that its due process rights were violated by an instruction which suggested that the insurer would only have to act unreasonably, as opposed to in bad faith, in order to be held liable for punitive damages. The court stated that the insurer "draws a line between bad faith conduct, which it agrees would support punitive damages, and merely unreasonable conduct, which it says would not support such damages." Allsup's, 976 P.2d at 16. In discussing the line between bad faith and unreasonableness, the court stated "[w]hile bad faith and unreasonableness are not always the same thing, there is a certain point, determined by the jury, where unreasonableness becomes bad faith and punitive damages may be awarded." Id. at 17. The court then discussed other jury instructions and concluded that they properly "advised the jury that if it found that [the insurer] acted in bad faith, it also had to determine whether this constituted malicious, reckless, or wanton conduct before it could award punitive damages." Id.

The district court observed that:

> [w]hile these statements possibly suggest a standard for punitive damages beyond bad faith actions, they are only a supporting rationale for rejecting a due process argument premised upon another instruction. Indeed, the due process argument was akin to allowing punitive damages for gross negligence, which the Paiz court had rejected. Allsup's does not, in the context of an adversarial presentation, reject the court's prior approach to punitive damages in the bad faith area, let alone in the bad faith failure to settle context.

Memorandum & Order at 14, Appellant's App. Vol. I at 343.

For all the above reasons, the district court upheld the instruction given in this case. Both parties in this case have explicitly declined our invitation to certify this matter to the New Mexico Supreme Court. We conclude that, for the reasons stated in the district court's opinion, we are unconvinced that UJI 13-1718 is an incorrect statement of New Mexico law. The New Mexico Supreme Court has never expressly so held, despite a clear suggestion by the New Mexico Court of Appeals in Teague-Strebeck, 985 P.2d at 1204 n.1, that it consider that question. Further, in recently reissuing the Directions for Use of UJI 13-1827, the Supreme Court indicated that UJI 13-1718 remains the proper instruction in bad faith insurance cases. We accordingly affirm the district court's denial of Nutmeg's post-trial motions based upon the giving of the jury instruction on punitive damages in this case.

## C. Sufficiency of evidence

- 12 -

Nutmeg argues the evidence is insufficient to support an award of punitive damages under a standard requiring something more than bad faith.  Because we have held that the jury was properly instructed that it could award punitive damages once it determined that Nutmeg had acted in bad faith, and Nutmeg does not challenge the jury's finding of bad faith, we need not address the sufficiency of the evidence supporting the punitive damages award.

### 2.  Prejudgment Interest

Nutmeg argues the award of prejudgment interest should be reversed. Nutmeg initially appeared to argue that the district court relied upon N.M. Stat. Ann. § 56-8-3(A), which allows prejudgment interest "on money due by contract," and that statute is inapplicable because a bad faith action based on an insurer's failure to settle a third-party liability claim arises in tort, not contract.  The parties now appear to agree that the district court rested its award of interest on § 56-8-3(B), which allows interest "on money received to the use of another and retained without the owner's consent expressed or implied."  It argues the award under that section should be reversed because Nutmeg did not receive and retain the City's money.  We agree.

Under New Mexico law, the award of prejudgment interest is a matter of right, subject to equitable considerations, when the amount due is fixed and

ascertainable, and a matter of the court's discretion when it is not.     See Taylor v. Allegretto , 879 P.2d 86, 89 (N.M. 1994).     It has been applied in cases involving unjust enrichment,    see Sunwest Bank of Albuquerque, N.A. v. Colucci    , 872 P.2d 346 (N.M. 1994)  , and quantum meruit.   See Taylor , 879 P.2d at 89.   See also United States v. Gaechter Outdoor Advertising, Inc.     , Nos. 99-2201, 99-2212, 2000 WL 985863 at *9 (10th Cir. July 18, 2000) (unpublished) (noting that unjust enrichment or quantum meruit can be the basis of a prejudgment interest award under § 56-8-3(B)).

The City's argument, with which the district court agreed, appears to be that, because Nutmeg owed the City compensatory damages because of its bad faith conduct, Nutmeg effectively retained money which in reality was the City's and should therefore pay prejudgment interest on it.  Respectfully, we are unpersuaded.  That is tantamount to saying that any award of damages should always be accompanied by an award of prejudgment interest.  We do not believe the New Mexico courts would expand § 56-8-3(B) to this extent.  There is no unjust enrichment or quantum meruit action here.  Rather, there is simply liability for damages caused by tortious conduct.  We therefore reverse the award of prejudgment interest.

### 3.  City's Cross-Appeal

- 14 -

The City cross-appeals the district court's denial of its motion for attorney's fees. N.M. Stat. Ann. § 39-2-1 provides as follows:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

The district court rejected the City's argument that this statute permits an award of attorney's fees in this case, on the ground that "this case involves a dispute over third-party coverage, not first-party coverage." Memorandum & Order at 19, Appellant's App. Vol. I at 348. We affirm.

As the district court observed, the "universal view" is that "[i]f the insurer's performance of its duty to pay runs directly to the insured for indemnifying the insured's direct loss, then the insurance classification is called 'first-party insurance.' The insurance benefit (the policy's financial proceeds) is paid to the insured to rectify the insured's actual loss." Id. (quoting 1 Erik Mills Holmes et al. Holmes's Appelman on Insurance 2nd §§ 3.2 at 342). By contrast,

> [i]f the insurer's duty to pay runs to a third-party claimant who is paid according to a judgment or settlement against the insured, then the insurance classification is called 'third party insurance.' A liability insurer pays policy proceeds directly to the third party on behalf of the insured who has a legal obligation to pay the third party.

Id.

- 15 -

As the district court held, New Mexico follows this general rule. The City attempts to argue that this case is really a first party claim, because it alleges a violation of Nutmeg's obligation to act in good faith and investigate third party claims in good faith, and that obligation runs directly to the insured, the City. This argument would obviate the distinction between first and third party claims, because all insurance contracts contain an implied obligation to act in good faith. And it would appear to make attorneys fees available under § 39-2-1 in virtually every insurance case. We doubt the legislature intended that.

Moreover, the City's claim against Nutmeg was based upon tortious bad faith conduct. It was not a claim for coverage under an insurance contract. We read the plain language of the statute to apply only to cases involving claims of "first party coverage." See Amica Mut. Ins. Co. v. Maloney, 903 P.2d 834, 842 (N.M. 1995) ("We note that the legislature opted to use the limiting phrase 'an insurer who has not paid a claim on any type of first party coverage' as opposed to simply stating 'an insurer who has not paid any type of claim.'"). We therefore affirm the district court's denial of the City's motion for attorneys fees.

**CONCLUSION**

For the forgoing reasons, we AFFIRM the district court's decision in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge