This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36614**

**OLD REPUBLIC INSURANCE COMPANY,**

Plaintiff-Appellee/Cross-Appellant,

v.

**ECLIPSE AVIATION CORPORATION,**

Defendant-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jeffrey M. Croasdell
Tyler M. Cuff
Albuquerque, NM

for Appellee

Durham, Pittard & Spalding, LLP
Rosalind B. Bienvenu
Justin R. Kaufman
F. Leighton Durham, III
Morgan A. McPheeters
Santa Fe, NM

Frost Brown Todd, LLC
Bryan P. Rose
Dallas, TX

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**     In this case, we review the final judgment of the district court: (1) finding in favor of Plaintiff Old Republic Insurance Company (Old Republic) on claims of negligence and breach of contract against Defendant Eclipse Aviation Corporation (Eclipse); and (2) awarding Old Republic prejudgment interest on the damages derived from those claims. Eclipse, challenging Old Republic's right as subrogee to bring some of the claims against it, appeals the district court's final judgment and the court's denial of Eclipse's motion to alter, amend, or reconsider the judgment (motion for reconsideration). Old Republic, too, appeals the final judgment, challenging certain aspects of the prejudgment interest award. We consolidated the appeals for review. Concluding that Old Republic had a right of subrogation to bring the contested claims and that Old Republic did not preserve the prejudgment interest issue, we affirm.

## BACKGROUND

**{2}**     Old Republic's claims against Eclipse arose from an incident in which hail damaged two aircraft it insured. The first, registered as N187EA and referred to throughout this opinion as "the N187EA," was insured by Old Republic under a contract with Texas Aviation Sales & Leasing (Texas Aviation). The second aircraft was also insured by Old Republic, but under a contract with Valley Hope Association (Valley Hope). Old Republic alleged in its complaint that both aircraft were damaged while in Eclipse's possession.

**{3}**     After the hailstorm, Texas Aviation and Valley Hope filed claims with Old Republic. Old Republic paid Valley Hope for repairs to its aircraft. For repairs to the N187EA, Old Republic made a payment to the order of three entities: Texas Aviation; Air Corp, Inc. (Air Corp); and Amegy Bank.

**{4}**     According to the pretrial order, the identity of the aircraft, the company insuring them, and the insured under each insurance contract constituted the only undisputed facts before trial. Meanwhile, there were thirty-two contested facts and fourteen contested legal issues. Notably, the parties did not identify as contested issues for trial (1) ownership of the N187EA; or (2) Old Republic's right to bring the action as subrogee.

**{5}**     During the bench trial, however, the N187EA-ownership and subrogation-right issues surfaced because of statements made by a witness, Craig Ireland, for Old Republic. Ireland stated that Air Corp—not Texas Aviation—was the registered owner of the N187EA. Ireland explained that Air Corp and Texas Aviation were subsidiaries of another entity, the Wikert Group (Wikert), and that Texas Aviation's "sole purpose" with regard to the N187EA was to procure insurance for it. Ireland further testified that, at the time of the hailstorm, he was the executive vice president, chief financial officer, and treasurer of Wikert and also the chief financial officer and treasurer of Texas Aviation.

**{6}** Ireland's statement about N187EA ownership was in conflict with Old Republic's original and amended complaints, which stated that the damaged aircraft were "owned by" Valley Hope and Texas Aviation, respectively.[1]

**{7}** After hearing Ireland's testimony that Air Corp owned the N187EA, Eclipse's view of part of the case changed: Eclipse asserted that Old Republic lacked standing to bring the N187EA-related claims. Eclipse moved for judgment as a matter of law, arguing that such standing was lacking because an insurer in a subrogation action, in this case, Old Republic, "need[s] an assignment from the owner of the aircraft" to pursue claims and, based on Ireland's testimony, Texas Aviation was not the owner of the N187EA, but rather Air Corp was. Eclipse went on to argue that the proof of loss statement entered into evidence by Old Republic showed what Eclipse characterized as a purported assignment of the claims by Ireland as treasurer of Texas Aviation, and that there was no assignment of the claims by Air Corp. Eclipse concluded that without an assignment of the claims by the N187EA's owner, Air Corp, to Old Republic, Old Republic could not assert them.

**{8}** The district court denied Eclipse's motion and ultimately found Eclipse liable for the damage to both aircraft. After trial, Eclipse moved to reconsider, maintaining that Old Republic lacked standing. The court also denied that motion. At no time did the court enter a finding of fact regarding N187EA ownership or one regarding the relationships among Wikert, Texas Aviation, and Air Corp, nor did it enter a conclusion of law regarding Old Republic's right to bring the action.

**{9}** Eclipse now appeals both the final judgment and the denial of its motion for reconsideration. Eclipse contends that Old Republic had no right to bring the N187EA-related claims against it. Old Republic also appeals the final judgment, challenging the accrual rate and start date of the prejudgment interest awarded. We consider each issue in turn.

## DISCUSSION

### I.     Old Republic Had a Subrogation Right to Bring the N187EA-Related Claims

**{10}** Implicit in the district court's finding of Eclipse's liability with respect to the N187EA and in the court's denial of Eclipse's post-judgment motion is the recognition of Old Republic's right to bring the action under the doctrine of subrogation, an equitable remedy. *See Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 46, 301 P.3d 387 (characterizing subrogation as an equitable remedy). This right constitutes the standing required for Old Republic to bring its N187EA-related claims. *Cf. Liberty Mut. Ins. Co. v. Salgado*, 2005-NMCA-144, ¶ 23, 138 N.M. 685, 125 P.3d

---

[1]Other evidence introduced additional uncertainty about the N187EA ownership. The sworn proof of loss statement entered into evidence without objection, which Old Republic asserts it submitted to Eclipse during discovery, states that "sole and unconditional" ownership is in Texas Aviation, as the insured, but also lists as exceptions to such ownership—exceptions defined as "any interest, mortgage or otherwise"—Air Corp and Amegy Bank. Amegy Bank, according to Ireland, held the note on the N187EA.

664 (recognizing that, absent a claim for subrogation, an insurer lacks standing to maintain a third-party claim against a tortfeasor).

**{11}** "Ordinarily, we review a [district] court's exercise of its equitable powers for abuse of discretion. However, the question of whether the district court is permitted to exercise its equitable powers is a question of law, which is reviewed de novo." *Sunnyland Farms*, 2013-NMSC-017, ¶ 46 (alterations, emphasis, internal quotation marks, and citations omitted). Here we consider the legal question of whether Old Republic had a subrogation right with respect to the N187EA-related claims; accordingly, our review is de novo. If we determine that Old Republic had the right, then Old Republic had the standing that Eclipse contends it lacked.

**{12}** In essence, Eclipse argues that the defect in Old Republic's right to bring the N187EA-related claims stems from Texas Aviation's non-ownership of the N187EA. This is apparent both in Eclipse's failure to raise the subrogation issue in the pretrial order (before Eclipse recognized the possibility of such non-ownership) and also in its briefing on appeal. Even if we assume, as Eclipse does and as Old Republic appears not to dispute, that Air Corp owned the N187EA,[2] we disagree with Eclipse that such ownership—and the absence of an assignment of rights by Air Corp to Old Republic— defeats Old Republic's N187EA-related claims. We reach this conclusion based on the subrogation doctrine's broad principles and purpose.

**{13}** Subrogation is "the working out of an equitable adjustment" between an insured, a tortfeasor, and an insurer "by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 222:8, at 222-30 (3d ed. 2005); *accord Amica Mut. Ins. Co. v. Maloney*, 1995-NMSC-059, ¶ 8, 120 N.M. 523, 903 P.2d 834 ("The doctrine of subrogation is founded upon . . . equitable principles, for the purpose of accomplishing the substantial ends of justice.").

> Accordingly, subrogation's purpose has been described from the perspective of the insured, the tortfeasor, and the insurer, often in terms of the effect on the other parties or in combination. . . . From the perspective of the tortfeasor, . . . a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability . . .; since the insured has already been paid for his or her harm, the liability of the third person should now inure for the benefit of the insurer. And from the perspective of the insurer, . . . subrogation has the objective of reimbursing the insurer for the payment which it has made. . . . [I]t is only equitable and just that the insurer should be reimbursed for its payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured, the third party would go free notwithstanding the fact that he or she has a legal obligation in connection with the damage.

2See Footnote 1.

16 Russ & Segalla, *supra*, § 222:8, at 222-30 to -33 (footnotes omitted); *accord Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002-NMCA-080, ¶ 21, 132 N.M. 518, 51 P.3d 1172 (stating that subrogation was developed with the intent to avoid unjust enrichment).

**{14}** The doctrine of subrogation is "liberally applied for the protection of its natural beneficiaries who are insurers which have paid losses caused by a third party." 16 Russ & Segalla, *supra*, § 222:9, at 222-34. "Because of its broad equitable foundation, it is said that subrogation is to be applied without regard to technicality." *Id.*

**{15}** Contrary to these principles, Eclipse's assertions about subrogation reflect a technical, rigid application of the doctrine with regard to Old Republic. For one thing, Eclipse posits that Air Corp did not assign any right to Old Republic to bring the N187EA-related claims. But this point is immaterial because our law does not require formal assignment of the claim by the insured for an insurer to bring an action as subrogee. Rather, New Mexico law recognizes "equitable subrogation," which arises by operation of law upon payment by the insurer to the insured. *See, e.g.*, *Amica Mut. Ins. Co.*, 1995-NMSC-059, ¶ 8; *Health Plus of N.M., Inc. v. Harrell*, 1998-NMCA-064, ¶ 12, 125 N.M. 189, 958 P.2d 1239; *see also Bennett Truck Transp., LLC v. Williams Bros. Const.*, 256 S.W.3d 730, 733 (Tex. App. 2008) (dismissing under principles of equitable subrogation the defendant's argument that, because the plaintiff neither owned the damaged property nor received an assignment of rights from the property owner, the plaintiff lacked standing to bring suit); 16 Russ & Segalla, *supra*, § 222:55, at 222-95 to -96 (observing that no formal assignment to an insurer is required under equitable subrogation); *see generally* George E. Harris, *A Treatise on the Law of Subrogation: Legal, Equitable and Conventional* § 607 at 409-10 (1889) (summarizing the concepts of equitable subrogation). Under the doctrine of equitable subrogation, "when an insurer pays the claim of its insured under the insured's policy, it is deemed to be subrogated . . . to recovery of its payments against the person who caused the loss." *Amica Mut. Ins. Co.*, 1995-NMSC-059, ¶ 8 (internal quotation marks and citation omitted).

**{16}** This doctrine controls here because it is undisputed that all the necessary elements are present: (1) Old Republic made a payment under Texas Aviation's policy covering the N187EA; (2) the terms of the policy required the payment; and (3) the reason for the payment was the infliction of damage for which the district court found Eclipse legally responsible. Having paid the claim for damage to the N187EA, Old Republic is deemed subrogated and may recover its payment against Eclipse.

**{17}** Eclipse draws a different conclusion based on non-ownership by Texas Aviation of the N187EA and on related assertions that (1) the payment by Old Republic to Texas Aviation was invalid under the insurable interest doctrine;[3] and (2) the corporate

---

3As relevant here, the doctrine provides that one may collect under an insurance policy only if the person has an "insurable interest," *Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co.*, 1999-NMCA-109, ¶ 19, 127 N.M. 603, 985 P.2d 1183, *overruled on other grounds by Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 6, 135 N.M. 106, 85 P.3d 230, which is defined as "any actual, lawful and substantial economic interest in the safety and

identities of Wikert, Texas Aviation, and Air Corp had not been established as so unified as to recognize that any of the entities imputed its interest in the N187EA-related claims to another. Eclipse applies the insurable interest doctrine to argue that, as the named insured on the policy covering the N187EA, Texas Aviation had no insurable interest in the aircraft and hence suffered no injury when it was damaged. Therefore, Eclipse continues, Old Republic—as the insurer standing in the shoes of and having only the rights of Texas Aviation—failed to demonstrate the injury required to bring the N187EA-related claims. Eclipse's corporate identity argument is that Old Republic failed to show under principles of the alter ego doctrine[4] that Air Corp's injury passed to Texas Aviation by virtue of the relationships among Wikert and its subsidiaries, Texas Aviation and Air Corp. We reject these arguments for two reasons.

**{18}** First, the potential for harm to arise by deeming Old Republic the proper party with respect to the N187EA-related claims, given the possible lack of identity between the insured and the N187EA owner, is slight. Eclipse identifies the potential harm as the risk of duplicative lawsuits: "If an insurer can sue a third party tortfeasor without obtaining a valid subrogation of claims from the party that suffered the actual injury, the tortfeasor is open to multiple duplicative lawsuits[.]" As a general proposition, that might be so—but it is not plausible here. To test the theory, we assume that Air Corp is the true owner of the claims. A second, duplicative lawsuit would materialize were Air Corp to later file a complaint against Eclipse for damage arising from the hailstorm incident. But this outcome is unlikely, as Air Corp has no damages. Although the parties at times dispute who performed the work, Eclipse acknowledges in its answer to Old Republic's amended complaint that the hail-damaged N187EA was indeed repaired. And Air Corp did not incur the cost of that repair; rather, Old Republic did.

**{19}** The fact that any loss to Air Corp was cured is essential as we consider the broader picture of this case and explain the second reason for rejecting Eclipse's conclusion. What remains after the hailstorm incident is this: Air Corp and Texas Aviation have no outstanding injury or loss; in contrast, Old Republic is left with an unreimbursed expenditure incurred for the purpose of making the N187EA's owner whole; and Eclipse, meanwhile, has been found liable for the hail damage to the N187EA. To adopt Eclipse's view would leave Old Republic unreimbursed for its payment and allow Eclipse to go free in the face of its fault. Such a consequence clashes with the subrogation doctrine's purpose of distributing parties' gains and losses to promote equity. *See Amica Mut. Ins. Co.*, 1995-NMSC-059, ¶ 8. Given the underlying purposes of subrogation, including that it is intended for the benefit of insurers that have compensated their insureds for the harm caused by third parties, 16 Russ & Segalla, *supra*, § 222:9, at 222-34, the equitable adjustment of obligations effected by recognizing Old Republic's subrogation right with respect to the N187EA claims is

---

preservation of the subject of the insurance free from loss, destruction, pecuniary damage or impairment." NMSA 1978, § 59A-18-6(B) (1984).

4"Alter ego" is defined as "[a] corporation used by an individual or a subservient corporation in conducting personal business, the result being that a court may impose liability on the individual or subservient corporation by piercing the corporate veil when someone dealing with the corporation is the victim of fraud, illegality, or injustice. *Alter Ego, Black's Law Dictionary* (11th ed. 2019).

appropriate. Because we conclude that the district court correctly recognized Old Republic's subrogation right, we affirm the court's final judgment insofar as Eclipse challenges it.

**{20}** For the same reasons, we affirm the district court's denial of Eclipse's motion for reconsideration. We review the denial of such a motion for an abuse of discretion. *See Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 9, 135 N.M. 423, 89 P.3d 672. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration, internal quotation marks, and citations omitted). Eclipse's motion for reconsideration raised only one issue: that of Old Republic's standing to bring the N187EA-related claims. As discussed, the establishment of a subrogation right constitutes standing, and the question of that establishment is one of law that we review de novo. *See Sunnyland Farms*, 2013-NMSC-017, ¶ 46. In its motion, Eclipse simply elaborated on the reasons for its position. Having already concluded that the district court did not err in implicitly recognizing Old Republic's right of subrogation to bring the N187EA-related claims, we also conclude that the court did not abuse its discretion in denying Eclipse's motion for reconsideration.

## II. Old Republic Did Not Preserve the Prejudgment Interest Issue

**{21}** Old Republic appeals the final judgment's award of prejudgment interest accruing at a rate of 10 percent per year beginning on the date Old Republic filed its original complaint. Essentially, Old Republic argues that the district court erred in applying NMSA 1978, Section 56-8-4 (2004) in its prejudgment interest ruling rather than NMSA 1978, Section 56-8-3 (1983). According to Old Republic, Section 56-8-3 entitles it to prejudgment interest accruing at a rate of 15 percent per year beginning on the dates it paid Valley Hope's and Texas Aviation's claims.

**{22}** Eclipse argues that Old Republic did not preserve this issue for review. We agree.

**{23}** Rule 12-321(A) NMRA provides, "[t]o preserve an issue for review it must appear that a ruling or decision by the district court was fairly invoked. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party." "[O]n appeal, [a] party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

**{24}** In violation of Rule 12-318(A)(4) NMRA, Old Republic does not include in its brief in chief "a statement explaining how the issue was preserved in the court below" with a citation to the transcript of proceedings. Rule 12-318(A)(4). In its reply, Old Republic

states that the issue was "squarely preserved," but cites only one portion of the transcript to support its contention.

**{25}** We reviewed the portion of the transcript that Old Republic cites in support of its claim that it preserved this issue, as well as surrounding pages, to ascertain whether Old Republic fairly invoked a decision by the district court to apply Section 56-8-3 instead of Section 56-8-4. In so doing, we considered whether Old Republic lacked the opportunity to object to the court's application of Section 56-8-4.

**{26}** Toward the end of trial, before the district court ruled on the merits of the case, Old Republic informed the court that two statutes allow an award of prejudgment interest: Section 56-8-3 and Section 56-8-4. When the court asked for clarification, Old Republic attempted to explain the difference between the two. After Eclipse finished its closing arguments, the court announced that it found in favor of Old Republic on its breach of contract claims. The court then awarded Old Republic prejudgment interest "at 10 percent" accruing "from the date of the filing of the complaint." Old Republic confirmed that Section 56-8-4 was the statute authorizing an award of interest accruing from that point in time. The parties then debated the issue of when the interest should begin to accrue, and the court ruled that it would be from the date of the original complaint's filing. Following some brief requests by the parties for clarification on the prejudgment interest ruling, the court recessed, and the trial ended.

**{27}** Markedly, in the time after it knew fully of the court's ruling and before trial ended, Old Republic did not object to the district court's prejudgment interest rulings or highlight any impropriety in the court's treatment of Section 56-8-4 as controlling. Only now on appeal does it contend that prejudgment interest for a breach of contract claim should have been awarded under Section 56-8-3. Old Republic had a fair opportunity to alert the district court to what Old Republic now claims was the court's application of the wrong statute, but it did not do so. We conclude that Old Republic did not "fairly invoke[] a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. Because of that failure, we will not review this issue. *See Crutchfield*, 2005-NMCA-022, ¶ 14.

**{28}** Therefore, we affirm the district court's final judgment with regard to the award of prejudgment interest.

**CONCLUSION**

**{29}** We affirm.

**{30}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**